(February 2, 1903.)·

## WILSON v. EAGLESON.

### [71 Pac. 613.]

INJUNCTION--MAY ISSUE ON ORDER OF DISTRICT JUDGE—UNDERTAKING REQUIRED—WHEN SUFFICIENT.—Where the complaint alleges great and irreparable injury to growing crops, and that the damage cannot be justly estimated under the provisions of section 4288 of the Revised Statutes, a district judge is empowered to order an injunction to restrain the acts complained of. An undertaking regular in form is not invalid for the reason that the sureties did not justify that they were householders or freeholders of the county and state. The justification is no part of the undertaking.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

The facts are fully stated in the opinion.

Martin & MacElroy, for Appellants.

The court should not order injunction to issue without an adequate undertaking in form required by law. The original bond is a part of the record. It is for only $250, and did not have attached the affidavit required by section 3749 of the Code of Civil Procedure of 1901, stating that the sureties were either householders or freeholders. This matter was called to the attention of the court in the motion to dissolve. The court ordered the modified injunction without requiring any undertaking whatever. The undisputed testimony, showed a probable loss of more than $2,500. We respectfully submit that under the provisions of section 3749, above mentioned, an undertaking without this affidavit is a nullity. Also, that it

was the duty of the court, upon making the order appealed from in this case, to require a bond in sufficient amount to protect the defendants. This case stands as if there were no undertaking whatever. It is necessary that bond be given. (*McCracken v. Harris,* 54 Cal. 81; *Schacht v. Odell,* 52 Cal. 448.) We are unable to find any authority holding that the destruction of annual crops is sufficient ground for injunction without insolvency. (*Fulton Irr. Ditch Co. v. Twombly,* 6 Colo. App. 554, 42 Pac. 254.) The loss of crops could have been compensated in damages at the end of the season. Equitable relief can only be invoked when there is no adequate legal remedy. Where realty is damaged by the destruction of trees or permanent improvements, the measure of damages is the difference between the value of the real estate with and without the improvements or trees destroyed; but in case of destruction of crops we find that they are valued wholly separate and independent from the real estate. (*Shotwell v. Dodge,* 8 Wash. 337, 36 Pac. 254; *Gause v. Perkins,* 3 Jones Eq. (N. C.) 177, 69 Am. Dec. 728.) Neither defendants in the case nor the court can say what land, if any, of the plaintiffs is being irreparably injured. "It is a general rule of equity pleadings that in a suit for an injunction the plaintiff's bill must allege that he has some interest or title which it is the duty of the court to protect; and so it has been held that, in a suit to restrain a nuisance, the plaintiff must aver that he was the owner of the premises affected by the nuisance at the time when the case complained of was commenced." (14 Ency. of Pl. & Pr. 1143; *Stone v. Bumpus,* 40 Cal. 428; *Denner v. Chicago etc. Ry. Co.,* 57 Wis. 218, 15 N. W. 158.) "Mandatory preliminary injunctions are seldom granted and only in a particular class of cases; and obviously, alleged nuisances ought not, in ordinary cases, to be abated by preliminary injunctions." (*Stewart v. Superior Court,* 100 Cal. 543, 35 Pac. 156, 563; *Gardner v. Stroever,* 81 Cal. 150, 22 Pac. 483; *Delger v. Johnson,* 44 Cal. 182; *Hagen v. Beth,* 118 Cal. 330, 50 Pac. 425.)

Richards & Haga, for Respondents.

The order complained of was not granted until the court had carefully considered and balanced the inconveniences likely to be incurred by the respective parties through the granting or withholding of the injunction. The issuance, dissolution or continuance of a preliminary injunction is a matter within the sound discretion of the court that issues the injunction, and it is the settled rule in such cases that the appellate court will not interfere with the exercise of that discretion, except in a case of palpable error or abuse of discretion. (*Washington etc. Co. v. Coeur d'Alene etc. Co.,* 2 Idaho, 439, 17 Pac. 142; *White v. Nunan,* 60 Cal. 406; *Parrott v. Floyd,* 54 Cal. 534; 10 Ency. of Pl. & Pr. 983.) This is specially true where the court examines the premises in person, as the court on appeal cannot tell what he saw. The court that grants a preliminary injunction may, in its sound discretion, modify it at any time before the final hearing. (*Hobbs v. Canal Co.,* 66 Cal. 161, 4 Pac. 1147; 10 Ency. of Pl. & Pr. 1092.) Counsel insist that the "court should not order an injunction to issue without an adequate undertaking in form prescribed by law." It is then insisted that the words "house" or "free" having been omitted from the affidavit made by the sureties and attached to the undertaking, render the undertaking a nullity. Counsel seem to overlook the provisions of section 3287, under which this undertaking was given. Appellants have never excepted to the sufficiency of the undertaking filed herein. It is true appellants in their motion to quash, filed July 1, 1902, among other things, set forth "that plaintiffs have not filed a bond herein in compliance with the law, and the sureties thereon have failed to justify or qualify according to law." This is in no sense an exception to the sufficiency of the sureties. (*Schact v. Odell,* 52 Cal. 448.) An injunction should not be absolutely dissolved for a failure to require the statutory bond. The proper order would be that a bond be executed within a reasonable time, or the injunction be discharged in default thereof. (*Jones v. Ewing,* 56 Ala. 360; *New v. Wright,* 44 Miss. 202; *Palmer v. Ellegood,* 4 Del. Ch. 53.) A defect in an injunction bond does not operate to dismiss the injunction suit. (*Massey v. Mann,* 17 Iowa, 137; *Alexander v. Ghiselin,*

5 Gill, 138; *Manley v. Leggett,* 17 N. Y. Supp. 68, 62 Hun, 562.) Counsel contend that it does not appear that. the plaintiffs have not an adequate remedy at law. Where equity can give relief, the complainant will not be compelled to speculate upon the chances of his obtaining relief at law. This doctrine has been applied in numberless instances. (16 Am. & Eng. Ency. of Law, 355; *Staples v. Rossi,* 7 Idaho, 618, 65 Pac. 67.) In actions for diversion of water, where there is a clear violation of an established right and a threatened continuance of such violation, it is not necessary to show actual damages or a present use of the water in order to authorize a court to issue an injunction or make it perpetual. (*Mott v. Ewing,* 90 Cal. 231, 27 Pac. 194; *Conkling v. Pacific Imp. Co.,* 87 Cal. 296, 25 Pac. 399; *Lux v. Haggin,* 69 Cal. 278, 10 Pac. 674; *Moore v. C. L. W. W.,* 68 Cal. 151, 8 Pac. 816.)

STOCKSLAGER, J.—This action is here on appeal from an order granting a preliminary injunction made by the district judge of Ada county on the twenty-third day of July, 1902. The complaint alleges that plaintiffs, with defendants, are the owners of what is known as the "Peninger lateral"—a ditch diverting water from what is known as the "New York canal"; that the same is a community ditch, etc. The second allegation sets out the course, lands through which it passes, etc. The third is that each of the plaintiffs are owners of tracts of land in Ada county under and tributary to said lateral. Fourth. That their lands are desert in character, and require the application of water to reclaim, produce crops, etc. Fifth. That said lateral is the only convenient means by which water can be carried from said lateral to their lands. Sixth. That plaintiffs have respectively placed under cultivation a large part of their lands, and that the same are now in a high state of cultivation, and are in need of water, etc. Seventh. That defendants have wrongfully, and without consent of plaintiffs, or any of them, at a point above the lands of plaintiffs, and in the vicinity of the point where the lateral diverts water from said canal, placed in said lateral check-gates which prevent the water belonging to plaintiffs from flowing through said lateral to said tracts of

land of plaintiffs. Eighth. That defendants have been frequently urged and requested to remove such obstruction, but declined so to do, and threatened to continue and will continue to maintain said obstruction of said lateral, unless required to remove the same by order of the court. Ninth. That if defendants maintain said check-gate in said lateral, the crops of plaintiff will be wholly destroyed, the labor and expense incurred in putting said lands under cultivation totally lost, and plaintiffs irreparably injured, etc. Tenth. That a large part of said crops are of recent planting, and require frequent irrigation to preserve the same until well started; that said crops have been deprived of the necessary water, for the reasons above stated, for some time; that should plaintiffs wait to give notice of this application for the injunction prayed for, such crops would be largely, if not wholly, destroyed, by reason of lack of moisture, etc. Then follows prayer for temporary injunction.

This complaint was filed June 27, 1902, and on the same day the judge made the following order and injunction:

"Order.

"The plaintiffs in the above-entitled cause having commenced an action in the above-entitled court against the above-named defendants, and having prayed for an injunction against the said defendants, requiring them to refrain from certain acts in the complaint filed herein, and hereinafter more particularly mentioned, on reading the said complaint in the said action, duly verified by the oath of H. G. Wilson, one of the plaintiffs in the said action, and it satisfactorily appearing to me therefrom that it is a proper case for an injunction, and that sufficient grounds exist therefor, it is hereby ordered by me, judge of said court, that upon filing by said plaintiffs of an undertaking in the sum of $250, duly conditioned as required by law, with the clerk of said court, there issue out of such court, under the seal thereof, a writ of injunction restraining said defendants, and each of them, their agents, servants, attorneys, lessees, and employees, and all others acting in aid or assistance of each or every of them, from in any manner maintaining

the alleged obstruction in the lateral described in said complaint, in any manner that will prevent said plaintiffs, and each of them, from procuring through said lateral the water to which the said plaintiffs, and each of them, are entitled, until the further order in the premises, and that they appear before me at 10 A. M. July 1, 1902, and show cause, if any there be, why said injunction shall not be made perpetual.

### "Injunction.

"To the Above-named Defendants, Greeting:

"The above-named plaintiffs having filed their complaint in our court against the above-named defendants, praying for an injunction against said defendants, requiring them to refrain from certain acts in said complaint, and hereinafter more particularly mentioned; on reading the said complaint in this action, and it satisfactorily appearing to the judge of said court therefrom that it is a proper case for an injunction, and that sufficient grounds exist therefor, and the necessary and proper undertaking having been given: We, therefore, in consideration thereof, and of the particular matters in the said complaint set forth, do strictly command that you, the said A. H. Eagleson, John W. Eagleson, and Ern G. Eagleson, until the further order of said court, and your, and each of your, attorneys and agents, servants, lessees, and employees, and all others acting in aid or assistance of you, or either of you, do absolutely desist and refrain from maintaining any obstruction in that certain ditch or lateral known as the 'Peninger lateral,' and taking water from the New York canal at a point in the northeast quarter of the southeast quarter of section 20, township 3 north, range 2 east, Ada county, Idaho, and extending thence in a northwesterly direction through the southwest quarter of the northeast quarter and the southeast quarter and southwest quarter of the northwest quarter of said section 20; thence through the northeast quarter of the northeast quarter of section 19 in said township; thence in a westerly direction along the northern boundary of said section 19; also along the northern boundary of section 24 in township 3 north, range 1 east; thence in a northwesterly direction through sections 14, 15,

16 and 17 in township 3 north, range 1 east—in any manner that will prevent the said plaintiffs, and each of them, from procuring through said lateral the water to which the said plaintiffs, and each of them, are entitled to, in the reclamation and cultivation of the lands of the said plaintiffs lying under and tributary to said lateral, and from in any manner interfering with the water of the said plaintiffs flowing through said lateral; and you may appear before the judge of said court at the courthouse at Boise City, Idaho, at 10 o'clock A. M. Tuesday, July 1, 1902, and show cause, if any there be, why this injunction should not be made perpetual.

"Witness: Hon. Geo. H. Stewart, judge of the said judicial district court, at the courthouse in the county of Ada, and the seal of the said court, this twenty-seventh day of June, 1902.

"[Seal.]"

On July 9th defendants filed their verified answer, denying that plaintiffs, or either of them, are the owners of any interest, estate, or title in the Peninger lateral at any point from the headgate of said lateral to and across the north half section 20, township 3 north, range 2 east, in Ada county, or any right to use said lateral for carrying water, except as hereinafter expressly admitted. Aver that at all times herein mentioned defendant A. H. Eagleson has been, and still is, the owner and in possession of the north half of section 20, township 3 north, range 2 east, and that the check-gates mentioned in the complaint herein are situated on the southeast quarter of northeast quarter of said section 20, and that said check-gates as well as the part of said lateral whereon the same are situated, is wholly situated upon the land of defendant; that said defendant, together with the New York Canal Company, Limited, owner of said New York canal, and plaintiff George Peninger, constructed said Peninger lateral from said headgates to said check-gates in the winter of 1900-1901, and completed the same in the spring of the year 1901, at which time, and as a part of the original construction thereof, defendants constructed the check-gate complained of herein; that at the time said lateral was constructed there was an understanding between defendant

A. H. Eagleson and said water company that an arrangement would be made whereby said water company should, by deed, acquire the right of way for the water carried by them through said lateral; that thereafter such intention was abandoned, and said defendants and neither of them have never conveyed any right of way or interest in said lateral to the plaintiffs herein, or either of them. Admit that plaintiffs George Peninger and Marion Elliott have carried small quantities of water through said lateral for the purposes of irrigation, but defendants allege that the same has been done under an oral license only, and not under a claim of right adverse or superior to the ownrship by said defendants of said lateral and said check-gates, etc. Deny the other allegations of the complaint. Aver that two hundred inches of said water is diverted from said Peninger lateral upon the land of defendants through the lower two of the said sublaterals by means of the check-gate complained of, and then set up the design and manner in which said check-gate is operated. Another averment is that defendants have one hundred and twenty-five acres of their lands cultivated to grass, which is wholly dependent upon the water through these laterals for irrigation.

After this answer was filed, a motion to quash the temporary injunction was interposed, and on the twenty-third day of July, 1902, the district judge made the following order:

" On reading and filing the affidavits, and after hearing, Richards & Haga appearing for complainants, and Martin & McElroy appearing for defendants, it is now, on motion of Richards & Haga, attorneys for plaintiffs, ordered that a preliminary injunction issue against the said defendants, and each of them, their agents, servants, lessees, attorneys, or employees and each of them, from maintaining the check-gate mentioned in the complaint at a greater elevation than fourteen inches from the floor of such check-gate, as now situated, and not less than sixty inches in width between the interior of the side walls of said check-gate.

　　　　　　　　　　　　　　"GEO. H. STEWART,
　　　　　　　　　　　　　　　　　　"Judge."

It is from this order the appeal is taken. The writ of injunction was issued on presentation of the complaint, and required the defendants to appear before the judge of said court at the courthouse, Boise City, at 10 o'clock A. M., Tuesday, July 1, 1902, and show cause, if any there be, why this injunction should not be made perpetual. On this date defendants appeared, and moved the court to dissolve and vacate the temporary injunction heretofore issued in this case for the following reasons: 1. That this is not a case where a temporary injunction or a mandatory injunction should issue prior to the finding of the court, and the plaintiffs made no showing herein authorizing the issuance of such injunction; 2. That plaintiffs have not filed a bond herein in compliance with law, and the sureties thereon have failed to justify or qualify according to law; 3. That the statement of facts made by plaintiffs in support of their application for injunction herein is false. Appellants have five assignments of error: 1. Denying the motion to dissolve the temporary injunction; 2. In issuing a temporary injunction herein without notice to defendants; 3. In making an order modifying the temporary injunction; 4. In issuing the injunction herein, and ordering a modification thereof, without requiring from the plaintiffs a lawful undertaking, and in sufficient amount to protect the property of the defendants; 5. In ordering a temporary injunction, or the modification thereof, upon the pleadings and evidence in this case—neither the complaint nor the evidence offered by plaintiffs being sufficient, *prima facie,* to sustain an order for injunction.

In the argument, counsel for defendants say: "The case then tendered by the plaintiffs is purely for the abatement of a nuisance, and not for the determination of conflicting claims to a canal, or water carried by a canal. We have attempted to classify our contentions under six subdivisions, to wit: 1. The court should not order injunction to issue without an adequate undertaking in form required by law."

As to the sufficiency of the bond in question, we only desire to say that it was a matter wholly within the discretion of the district judge, and we do not see wherein such discretion was abused. We may say, also, that counsel for appellants do not

call our attention to what may be termed an abuse of such discretion.

The next question urged by counsel in their able and exhaustive brief is that the bond was defective, for the reason that the sureties did not state that they were householders or freeholders within this state, in their justification as such sureties. The justification is as follows: "State of Idaho, County of Ada—ss.: Judson Spofford and W. H. Thompson, whose names are subscribed as sureties to the foregoing undertaking, being severally duly sworn, each for himself says that he is a resident and . . . . holder within this state, and is worth the sum in said undertaking specified as the penalty thereof, over and above all his just debts and liabilities, exclusive of property exempt from execution." This justification was before the clerk of the district court of Ada county, on the twenty-seventh day of June, 1902, and approved by the district judge on the same day. In support of their contention that this bond was defective, counsel call our attention to section 4934 of the Revised Statutes of Idaho. This section, among other things, says: "The officer taking the same [referring to the undertaking]| must require the sureties to accompany it with an affidavit that they are each residents and householders or freeholders within the territory," etc. This question was passed upon by this court in *Miller v. Pine Min. Co.*, 3 Idaho, 603, 32 Pac. 207. The court says: "The affidavit which is usually attached to a bond contains the justification of the sureties under section 4934. It is, however, no part of the undertaking, and the undertaking is complete without it." And the court cites 2 Hayne on New Trial and Appeal, section 213. We take it that the requirement of the statute in the justification of the sureties is more in aid of the officers who have to approve the bond, than any validity it may give to the bond; and in this case, if the district judge was fully satisfied that the bondsmen were able to respond in the amount named as a penalty, it would have been of no advantage to him to have them justify that they were freeholders or householders of Ada county. If, on the other hand, there was a question of their responsibility in his mind, he could have required them to take the statutory oath.

Counsel cite *McCracken v. Harris,* 54 Cal. 81, and *Schacht v. Odell,* 52 Cal. 448. We have examined these authorities, but do not find they take a different view from the one above ex· pressed.

It is next urged that it does not appear that plaintiffs have not an adequate remedy at law. It is true, plaintiffs do not allege the insolvency of the defendants, but they do say that "the damage to the crops growing upon these lands could not be justly estimated." Counsel for appellants call our attention to *Fulton Irr. Ditch Co. v. Twombly,* 6 Colo. App. 554, 42 Pac. 254. This case supports the contention of appellants, but our attention is not called to any statutory provision of that state similar to section 4288 of our statute. However, we have examined the Civil Code of Colorado, and find no section corresponding with said section 4288. It reads: "An injunction may be granted in the following cases: 1. When it appears by the complaint that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually. 2. When it appears by the complaint or affidavit that the commission or continuance of some act during the litigation would produce waste, great or irreparable injury to the plaintiff. 3. When it appears during the litigation that the defendant is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights, respecting the subject of the action, and tending to render the judgment ineffectual. 4. When it appears, by affidavit, that the defendant during the pendency of the action, threatens or is about to remove or to dispose of his property with intent to defraud the plaintiff, an injunction order may be granted to restrain the removal or disposition. 5. An injunction may also be granted on the motion of the defendant upon filing a cross-complaint, praying for affirmative relief upon any of the grounds mentioned above in this section, subject to the same rules and provisions provided for the issuance of injunctions on behalf of the plaintiff. 6. The district courts or any judge thereof sitting in chambers, in addition to the powers already possessed, shall have power to

issue writs of injunction for affirmative relief having the force and effect of a writ of restitution, restoring any person or persons to the possession of any real property from the actual possession of which he or they may be ousted by force, or violence, or fraud, or stealth, or any combination thereof, or from which he or they are kept out of possession by threats whenever such possession was taken from him or them by entry of the adverse party on Sunday or a legal holiday, or in the night-time, or while the party in possession was temporarily absent therefrom. The granting of such writ shall extend only to the right of possession under the facts of the case, in respect to the manner in which the possession was obtained, leaving the parties to their legal rights on all other questions the same as though no such writ had issued; provided, that no such writ shall issue except upon notice in writing to the adverse party of at least five days of the time and place of making application therefor." Again, it is noticeable that the opinion in this case does not refer to any statutory provision in Colorado, and hence is based upon the old equitable rule relating to injunctions. This question has been before this court in the case of *Gilpin v. Sierra Nevada etc. Min. Co.*, reported in 2 Idaho, 696, 23 Pac. 547, 1014, decited in February, 1890, and again *Staples v. Rossi*, decided in 1901, and reported in 7 Idaho, 618, 65 Pac. 67. These two cases discuss the question involved in the case at bar, and both hold that similar property may be protected by injunction under the provisions of our statute.

Counsel for appellants very earnestly and ably contend under their third assignment that this was not a proper case for a preliminary injunction, mandatory in character, the title of plaintiffs being in dispute, and it being conceded that the removal of the check-gate would inflict great damage on defendants. A number of authorities are cited in support of this contention. We have examined them carefully, but cannot agree with this contention. We think the complaint in this case alleged sufficient facts to justify the district judge in an effort to protect the property of all parties to the litigation, and, as we view it, the only real question before us for review is whether the district judge was in error in making the order appealed

from. The record shows that in the first order he required the parties to appear before him on the first day of July, 1902, and show cause why the order should not be made perpetual; that at this hearing a large number of affidavits were produced and read on both sides of the question, before him; that after a full hearing, and argument of counsel, the court or judge modified the first order, and seemingly attempted to protect all parties to litigation, by providing means by which each party to the suit should be furnished with water for the irrigation of their growing crops.

Counsel for respondents cite a number of authorities in support of their contention that there was no error in the order made by the district judge, appealed from, or any of the proceedings complained of by appellants. If the district judge did not abuse the discretion vested in him as a chancellor in this case, then the judgment should not be reversed.

We are of the opinion that there was no error in the order of the district judge, and that the judgment should be affirmed. It is so ordered, with costs to respondents.

Sullivan, C. J., and Ailshie, J., concur.