(March 15, 1905.)

WILSON v. EAGLESON.

[81 Pac. 434.]

COMPLAINT SUFFICIENT WHEN.

1. A complaint in an action to restrain the maintenance of a checkgate in a community irrigating ditch or lateral that alleges the ownership or possession, use and cultivation of lands

under such ditch or lateral; that such ditch or lateral is their only means of water supply; that the maintenance of check-gates conflict with the legal rights of plaintiff and is unlawful— is not demurrable.

(Syllabus by the court.)

APPEAL from District Court of Ada County. Honorable George H. Stewart, Judge.

Action to restrain defendants from maintaining checkgates in ditch or lateral. Judgment for plaintiffs, from which defendants appeal. Affirmed.

Martin & McElroy, for Appellant.

Does the complaint state a cause of action? If this is to be regarded as an action to restrain a trespass on water, it must clearly appear what water is to be protected by the judgment of the court; and where, as in this case, the lower water users on the canal are enjoining those at the head of the canal, the relief granted will be that the defendant be required to permit the special quantity of water turned into the canal for plaintiffs to pass by his checkgates and sublaterals and go on down the canal for the use of plaintiffs. Unless plaintiffs allege the amount of water they claim or that is being turned into a ditch for their use, the court will be unable to grant relief, since defendant is entitled to his day in court as to the existence of the right sought to be protected. There is also no allegation that the plaintiffs, or either of them, own any specific interest in the lateral, or sufficient interest therein to carry any particular quantity of water. (*Bowman v. Ayers,* 2 Idaho, 306, 13 Pac. 346; *Jensen v. Hunter* (Cal.), 41 Pac. 16; *Yeager v. Woodruff,* 17 Utah, 361, 53 Pac. 1045.) Upon what theory can the court destroy the crops of defendants to help those of plaintiffs? The burden is always upon the one asking an injunction to show the greater equities, and if the equities are equal, the injunction will be denied. (16 Am. & Eng. Ency. of Law, 2d ed., p. 363, par. 8, and authorities cited.; *Chartiers Block Coal Co. v. Mellon,* 152 Pa. St. 286, 34 Am. St. Rep. 645, 25 Atl. 597, 18 L. R. A. 702 (see p. 707); *Mott v. Underwood,* 148 N.

Y. 463, 51 Am. St. Rep. 711, 42 N. E. 1048, 32 L. R. A. 270 (see bottom last column, p. 272); *Fesler v. Brayton,* 145 Ind. 71, 44 N. E. 37, 32 L. R. A. 578.) In determining whether an injunction shall be granted or refused, the courts will always consider the injuries inflicted on others, strangers to the suit. (16 Am. & Eng. Ency. of Law, 2d ed., p. 364, and authorities cited.) Could the court in this case make an order for an injunction which shall in general terms restrain the defendants from in any manner interfering with any water belonging to the plaintiffs? We claim not: 1. For the reason that it is not shown in evidence that all of the plaintiffs have any right whatever; 2. For the reason that the relation of the plaintiffs and the defendants, in so far as their water rights are concerned, or the interest which they own or hold in the ditch, is not put in issue by the pleadings, and is not sufficiently shown in evidence, either to give the court jurisdiction, or to enable the court to justly determine the same, or to render a judgment thereon; 3. For the reason that such order is too indefinite and uncertain. The defendants or the plaintiffs can never tell with certainty whether it is being violated, and it will only lead to disputes and confusion. Injunction orders must be certain and specific. (*Lyon v. Botchford,* 25 Hun (N. Y.), 57; *Clark v. Clark,* 25 Barb. 76; High on Injunctions, sec. 884; *Ballentine v. Webb,* 84 Mich. 38, 47 N. W. 485, 11 L. R. A. 321; *Ellis v. Rademacher,* 125 Cal. 556, 58 Pac. 178, 180; *Robinson v. Clapp,* 65 Conn. 365, 32 Atl. 939, 29 L. R. A. 582, 592.)

Richards & Haga, for Respondents.

Every court of record has the inherent power to make rules for the transaction and regulation of its own business. (8 Am. & Eng. Ency. of Law, 2d ed., 29, and cases there cited; *Hanson v. McCune,* 43 Cal. 178.) Courts may rescind their rules, or may, in establishing them, reserve the exercise of discretion for particular cases; but a rule made without such qualifications must be applied to all cases that fall within it, until it is rescinded. (8 Am. & Eng. Ency. of Law, 2d ed., 31, and note 3; *Thompson v. Hatch,* 3 Pick. (Mass.) 512; *Treishel v. McGill,* 28 Ill. App. 68.) If an appeal be attempted and be not

perfected in accordance with all the conditions thus prescribed, whether by statute or rule, the court does not become vested with complete jurisdiction of the case for the purpose of review, and the abortive appeal will be dismissed. (2 Spelling on New Trial and Appeal, sec. 646.) This court has repeatedly held, where the transcript fails to show compliance with the statutes or rules of the court in the matter of appeals, that the appeal will be dismissed. The requirement that the transcript must be filed within sixty days after the appeal is perfected is mandatory, and has been enforced wherever the matter has been called to the attention of the court. (*Pence v. Lemp,* 4 Idaho, 527, 43 Pac. 75; *Taylor v. McCormick,* 8 Idaho, 37, 66 Pac. 805; *Penny v. Nez Perce County,* 4 Idaho, 642, 43 Pac. 570; *Fahey v. Belcher,* 3 Idaho, 355, 29 Pac. 112; *Mahoney v. Marshall,* 3 Idaho, 343, 29 Pac. 110; *Hattabaugh v. Vollmer,* 5 Idaho, 23, 46 Pac. 831.) We desire first to call the court's attention to the fact that most, if not all, of the questions raised by the appellants on their appeal were before this court and were passed upon by this court in the former appeal. (See *Wilson v. Eagleson,* 9 Idaho, 17, 71 Pac. 613.) The principle of *res judicata,* therefore, confronts the appellants on the present appeal. This court in a recent decision of *Hall v. Blackman,* 9 Idaho, 555, 75 Pac. 608, in discussing the question of effect of a former appeal, says: "There must necessarily be an end to litigation in any given case, but that object can never be attained if an appellate court can re-examine upon subsequent appeals the same questions which it has previously examined, and the fact that it may have made a mistake or committed an error will not warrant a re-examination and reconsideration upon another appeal in the same case. (*Lindsay v. People,* 1 Idaho, 438; *Board of Supervisors of Wayne Co. v. Kinnicott,* 94 U. S. 498, 24 L. ed. 260; *Aurora v. West,* 7 Wall. 82, 19 L. ed. 42; *Washington etc. Co. v. Sickles,* 24 How. 333, 16 L. ed. 653; *Wilkes v. Davies,* 8 Wash. 112, 35 Pac. 611, 23 L. R. A. 103; *Guarantee Co. of N. A. v. Phoenix Ins. Co.,* 124 Fed. 170.) Under statutes identical with ours the courts of other states have repeatedly held that "an appeal from the judgment does not present the evidence for review, unless error is assigned

in the overruling of the motion for a new trial." (*Pierce v. Manning,* 2 S. Dak. 517, 51 N. W. 332; *United States v. Trabing,* 3 Wyo. 147, 6 Pac. 721; *Hawkins v. Hubbard,* 2 S. Dak. 633, 51 N. W. 774; *First Nat. Bank v. Comfort,* 4 Dak. 167-173, 28 N. W. 855; *Myers v. Longstaff,* 14 S. Dak. 98, 84 N. W. 233; *Boyd v. Bryan,* 11 Okla. 56, 65 Pac. 940; *Withers v. Kemper, supra; Borgensen v. Cookstone,* 91 Minn. 91, 97 N. W. 734; *McNabb v. Northern P. R. Co.,* 12 N. Dak. 568, 98 N. W. 353; *Glaser v. Glaser,* 13 Okla. 389, 74 Pac. 944; *Rice v. Inskeep,* 34 Cal. 224.) The questions presented for review by an appeal from the judgment are of an entirely different character from those presented by an appeal from an order granting or denying a new trial. (*Holmes v. Warren,* 145 Cal. 457, 78 Pac. 954; *Toulouse v. Burkett,* 2 Idaho, 184, 10 Pac. 26.) A comparison of the findings with the complaint will show that the court found affirmatively on every issue raised by the complaint, and as the complaint had already been held sufficient, the lower court was certainly justified in making its findings in accordance with the allegations of the complaint. Two or three findings of fact have been placed among the conclusions of law, but this does not in any way impair the force of such findings. (*Miller v. Smith,* 7 Idaho, 204, 61 Pac. 824; *McCarthy v. Brown,* 113 Cal. 15, 45 Pac. 14; *Cushing v. Cable,* 54 Minn. 6, 55 N. W. 736.) "When the material issues are passed upon, it is not cause for reversal that an ultimate fact is placed with the conclusions of law, as it is difficult many times to distinguish between an ultimate fact and a conclusion of law." It is well-settled that ownership is an ultimate fact, and not a conclusion of law. (*Johnson v. Vance,* 86 Cal. 128, 24 Pac. 863; *Souter v. Maguire,* 78 Cal. 543, 21 Pac. 183; 21 Ency. of Pl. & Pr. 718; 12 Ency. of Pl. & Pr. 1044, 1045.) Findings are to be read and considered together and liberally construed in support of the judgment, and, if possible, are to be reconciled so as to prevent any conflict upon material points. (*People's Home Sav. Bank v. Rickard,* 139 Cal. 285, 73 Pac. 858; *Breeze v. Brooks,* 97 Cal. 77, 31 Pac. 742, 22 L. R. A. 256.)

STOCKSLAGER, C. J.—This is the second appeal in this case. A full statement of the facts, together with the demands

of the respective parties to this action, may be found in 9 Idaho, 17, 71 Pac. 613. In that hearing the sufficiency of the complaint and the undertaking upon which the restraining order was issued by the district court were before this court for determination. The opinion was filed February 2, 1903. It is shown by the records in this appeal that after the hearing in that case the plaintiffs filed an amended complaint, in which they set out a full description of the real estate owned by the respective parties plaintiffs to the action. An answer was filed to the original complaint, the substance of which will be found in the opinion reported in 9 Idaho, 17, 71 Pac. 613. A demurrer was filed to the amended complaint, to wit, that facts sufficient to constitute a cause of action in favor of said plaintiffs and against these defendants are not set out and alleged in said amended complaint. Also for the reason that it does not appear by said amended complaint what interest, estate or title, if any, plaintiffs, or either of them, own in what is described in said amended complaint as the Peninger lateral, and for the further reason that it does not appear what amount of water, if any, the said plaintiffs, or either of them, are entitled to divert from the New York canal. This demurrer was overruled and thereafter defendants answered denying that plaintiffs, or either of them, own any interest in the Peninger lateral or the right to the use of any water flowing through it, except as hereinafter admitted. Deny that said lateral was constructed or being maintained by the joint efforts of plaintiffs and defendants, or was at any time used by them for the irrigation of their lands, except as hereinafter admitted. Deny that lateral is a community ditch. Aver that the records of Ada county do not show that H. G. Wilson and A. H. Wilson were the owners of the land described in the complaint, and defendants have no information or belief on this subject sufficient to answer said allegation, and upon such ground deny that at the commencement of this action said plaintiffs, or either of them, were the owners of any of said tracts of land. On information and belief deny that plaintiff A. H. Bishop was the owner of the tract of land alleged in the complaint, and deny that J. L. Horton was the lessee or tenant of said Bishop. Upon information

and belief, "deny that at the commencement of this action, plaintiffs H. G. Wilson and A. H. Wilson and John R. Kennedy, or either of them, had placed under cultivation any portion of the said tract of land of which he is alleged to be the owner, or that the same or any part thereof was in a high state of cultivation, or had any crops growing thereon, or that any part thereof was depending on Peninger lateral. . . . . Deny that the land alleged to have been owned by A. T. Thomas and leased by James M. Hyatt is or was at the commencement of this action irrigated from the Peninger lateral, . . . . and aver that water for such purpose was and is delivered above said checkgates is absolutely necessary to the diversion of said water." The answer then avers: "That at all times herein mentioned defendant, A. H. Eagleson has been and still is the owner and in possession of certain lands, describing them, and that the checkgates mentioned in the complaint herein are situated wholly on the land of this defendant. That said Peninger lateral was originally constructed from said headgate to said checkgate in the winter of 1900 and 1901, and completed in the year 1901, at which time these defendants constructed the headgates complained of herein, and that none of said plaintiffs, with the exception of George Peninger, assisted in the construction of said canal. Admits that plaintiffs Peninger and Elliott, have carried small quantities of water through said lateral for the purpose of irrigating, amounting to about fifty inches, but the defendants allege that the same has been done under an oral license only, and subject to the rights of the defendants as herein alleged to use and maintain said lateral and said checkgates for the purpose of carrying water to the lands of defendants for the purpose of irrigation.

"That at all times since the construction of said lateral defendants have been the sole owners of that portion extending from the headgates to and across said lands of defendants, including the checkgates in controversy. Admit that some of the defendants at and prior to the commencement of this action were endeavoring to use said Peninger lateral to carry water for the purpose of irrigation, but defendants allege that except as herein admitted they have never granted to the plaintiffs, or

either of them, the right so to do, nor have said parties, or either of them, secured or attempted to secure any interest in said lateral or any right to use the same, and deny that they or any of them had any right to use said lateral for such purpose; and defendants further allege that at no time have they ever permitted the use of said lateral by the said plaintiffs, or either of them, in any manner adverse or hostile to the use thereof by defendants, and the maintenance therein by these defendants of a checkgate at the point where the checkgate in controversy is situated, or in any manner except as herein stated; and defendants further allege that said checkgate has been at all times maintained by them since the construction of said lateral, with such additional changes as were made necessary by the enlargement or other changes in said lateral."

Then follows an allegation: "That the New York Canal Company, Limited, is the owner of the New York canal, and a large quantity of water diverted thereby from Boise river, and Peninger lateral is a lateral of said canal.

"That defendants are the owners of all of section 20, except east half of southeast quarter thereof, and are the owners of water rights for three hundred inches from said New York canal, . . . . which water is delivered to defendants through said Peninger lateral by means of three sublaterals belonging to defendants. That in an action in the district court of Ada county in June, 1902, between the New York Canal Company, Limited, and the Ada County Farmers' Irrigation Company, it was decreed that the New York Canal Company should divert three hundred and twenty inches of water into the Peninger lateral for the use of these defendants; . . . . that such water was diverted by these defendants by means of said checkgates for use upon their said land; . . . . that said checkgate is of the character commonly used for such purpose, and is necessary and proper, . . . . and unless defendants are permitted to maintain the same they will be prevented from diverting and carrying their said water and using their said property, to wit, the Peninger lateral, and will be unable to irrigate the lands belonging to them and irrigated by means of said lateral."

It is then averred: "That the checkgate was constructed by de-

fendants at the same time with the original construction of the Peninger lateral, and as a part thereof, and has been continuously used and maintained by defendants. That said checkgate does not permit the water belonging to plaintiffs, or either of them, from flowing through said lateral, and that the maintenance thereof by defendants does not, and will not, interfere with the use of said lateral by anyone entitled thereto, and has not, and will not, cause the destruction of crops of plaintiffs." Then follows a denial that the crops of plaintiffs, or any of them, have been or will be injured by maintaining the checkgates in their present condition.

It will be observed from the pleadings in the case that there is no attempt on the part of the respondents to settle title to real estate; neither do they ask for the settlement of the water rights between themselves and the appellants. It is simply a question of the right of the defendants to maintain certain checkgates in the lateral from which all are dependent for water for use in the irrigation of their crops. It is insisted by learned counsel for respondents that this court has passed upon all the material questions involved in this appeal upon the former appeal heretofore referred to. Whilst the court did not say in so many words in that case that the complaint was sufficient, by inference it did say as much, as an objection was raised in that case to the sufficiency of the complaint to support the order made by the trial court which was the basis for the appeal, and the action of the lower court was sustained. We are of the opinion that the amended complaint now before us for consideration was sufficient for the full determination of all questions it was intended to have determined between the plaintiffs and defendants in the lower court, and that the demurrer was properly overruled.

It is urged by counsel for respondents that most, if not all, the questions now before the court on this appeal were before this court and passed upon in the former appeal, and have therefore become the law of the case. The record seems to uphold them in this contention. It is shown that the order appealed from now is practically the same as the one involved in that appeal. To say the least, both appeals are taken from orders

of the district court or judge thereof, restraining and prohibit-
ing the defendants from maintaining checkgates in the Peninger
lateral that will interfere with the flow of water in such lateral
past the lands of the defendants and to the lands of the plain-
tiffs. The language may not be literally the same, but the ob-
ject and purpose is unquestionably the same. The entire con-
troversy on both hearings, so far as the record shows, involved
the right of the defendants in the court below to maintain the
checkgates in the Peninger lateral, the defendants there in-
sisting that they could not successfully irrigate their lands
without the use of the checkgates, and that their rights were
superior in all respects to the rights of any of the plaintiffs;
hence, if the plaintiffs, or any of them, were injured, they must
suffer the consequences. On the other hand, the plaintiffs in-
sisted that they were entitled to the use of a certain quantity
of water to be delivered to them from the New York Canal
Company through the Peninger lateral, their lands lying below
the lands of the defendants, and along the lands of said Penin-
ger lateral, and that said water could not be so delivered if
the defendants were permitted to maintain the checkgates in
controversy.

Judging from the elaborate record in both hearings, all par-
ties to the controversy were given a full and complete hearing
by the learned judge in the court below, and on the first hear-
ing he granted a temporary restraining order restraining the
defendants from maintaining the checkgates above a certain ele-
vation, to wit: "Fourteen inches from the floor of such check-
gate, as now situated, and not less than sixty inches in width
between the interior of the side walls of said checkgate." This
order was made after a large number of affidavits were filed
in support of and in opposition to the maintenance of such
checkgates. Thereafter, and on the final trial of said cause, the
court made the order now under consideration, to wit: "And
it is further ordered, adjudged and decreed that the permanent
injunction of this court issue herein, directed to said defend-
ants, their servants, . . . . requiring them, and each of them,
to perpetually refrain from having or maintaining any artificial
obstruction, and particularly the said checkgate, in any way

or to any extent, that may or can interfere with the waters of the plaintiffs flowing in said Peninger lateral, as turned into such lateral to them, and each of them by the New York Canal Company, and that the plaintiffs have judgment for their costs."

Upon the last hearing we find that a large quantity of oral evidence was introduced, the witnesses for both plaintiff and defendants being examined and cross-examined at length in some instances, and we think properly. The court took upon itself the responsibility of asking questions, evidently with a view of arriving at the true facts in the case.

After such full and complete hearing the court made findings: 1. That the plaintiffs, together with defendants herein, constructed in the years 1900 and 1901 the lateral described in plaintiff's complaint and known as the Peninger lateral, and have since maintained the same at the joint expense and for the joint use of plaintiffs and defendants. 2. That such lateral was constructed to be used as a community lateral, and has ever since been maintained as such for carrying water from what is known as the New York canal to the lands of the plaintiff, to be used in irrigating such lands. 3. That the plaintiffs, except J. H. Horton and James M. Hyatt, who are lessees, are each owners of land under and tributary to such lateral. 4. That such lands are desert in character. 5. That the said lateral is the only convenient means by which water can be carried from said New York canal to and upon said tracts of land. 6. That much of plaintiff's land has been placed in cultivation, and requires the application of water for the preservation and cultivation of the crops thereon. 7. That defendants have constructed and are maintaining a checkgate in such lateral in a manner that prevents plaintiffs from procuring a free flow of water from said New York canal through such lateral, necessary to preserve and cultivate such crops. 8. That said defendants, though often requested to move such obstruction, have refused so to do, and threaten to continue such checkgates, and will do so unless restrained by an order of this court. 9. That should such checkgate be so maintained, plaintiffs' crops will be injured and destroyed, and plaintiffs' right to the use of such water through such lateral will be infringed upon, and the crops

of plaintiffs are of such a character that the injury thereto cannot be justly estimated in damages. 10. That A. H. Eagleson is the owner of the land described in his answer, and that the checkgate is upon such land. 11. That none of the plaintiffs are carrying water through said lateral under an oral license, subject to the rights of the defendants, or any of them. 12. That on the ninth day of June, 1902, this court by an alternative writ of mandate, required the New York Canal Company, Limited, to deliver three hundred inches of water to defendants at the head of the Peninger lateral, which writ was subsequently made permanent, and the said New York Canal Company, Limited, both prior and subsequent to the commencement of this action, turned water into said Peninger lateral for plaintiffs and defendants in bulk, without segregating or measuring out a certain or definite quantity for each or any of them. 13. That said checkgate is of the character commonly used in irrigating canals for diverting water into laterals and sublaterals, but when said Peninger lateral is not carrying water to its full capacity, said checkgate materially obstructs the flow of water to plaintiffs and each of them. 14. That during the irrigating season of 1902, defendants had not less than one hundred and forty acres of land in cultivation dependent on water from the Peninger lateral, and when there is only a small flow of water in said lateral said land cannot be fully or satisfactorily irrigated, except by means of a checkgate. 15. That said checkgate as maintained at the time of the commencement of this action, was constructed about the 1st of May, 1902, but a smaller checkgate was maintained at the same place by said defendants during the irrigating season of 1901. 16. That said checkgate prevents the water belonging to said plaintiffs and turned into said lateral for plaintiffs from flowing freely through said lateral, and the maintenance of said checkgate by the defendants does and will interfere with the use of said lateral by the plaintiffs and each of them, and will cause destruction of their crops and irreparable injury to plaintiffs.

. The conclusions of law are: 1. That plaintiffs each own the right to convey water through what is called the Peninger lateral described in the complaint herein for the purposes of irrigation.

2. That such lateral is owned in common by plaintiffs and defendants. 3. That the defendants wrongfully maintain a checkgate in such lateral in a manner that interferes with the rights of the plaintiffs, and each of them, in the use of said lateral, and that such acts on the part of the defendants will wrongfully deprive plaintiffs of their rights to the use of such lateral. 4. That the defendants should be perpetually restrained from in any manner maintaining such checkgate, in any way or to any extent that the same may or will interfere with the waters of the plaintiffs flowing through such lateral as turned into such lateral for the plaintiffs by the New York Canal Company.

Much has been said by counsel in their briefs for appellants as well as respondents, and many authorities cited, relative to the power and duty of this court to examine and pass upon the evidence in appeals from judgments where such appeal has been taken within sixty days from the date of its rendition, and a statement as if on motion for new trial has been settled and allowed. We do not feel called upon to pass upon this question on this appeal, for the reason that we have carefully examined the evidence as disclosed by the record and are fully satisfied that the findings and conclusions of the lower court were fully sustained by the evidence. The judgment is affirmed, with costs to respondents.

Ailshie, J., and Sullivan, J., concur in conclusion reached.

<div align="center">

ON REHEARING.