## McCABE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Special Term, Rockland County. January 14, 1909.)

1. WATERS AND WATER COURSES (§ 124*)—CONSTRUCTION OF RAILROAD—INJURIES TO ADJACENT PROPERTY—LIABILITY—SETTLEMENT—EFFECT.

A railroad company settled with an owner of land a claim for damages, past, present, and future, occasioned by water flowing over the land from a culvert under the track, and purchased from him a strip of land to permit the construction of a drain from the culvert so as to avoid future injury. The plan for the construction of the drain failed because the owner did not have title to the strip conveyed, and the company closed up the drain across the strip and left the ground in substantially the same condition that it was when the settlement was made. Held, that under the maxims that, when one goes into equity seeking equitable relief, he must go with clean hands, and that he who seeks equity must do equity, the owner was not entitled to equitable relief against the company without first making a return or tender of the consideration received on the settlement.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 124.*]

2. WATERS AND WATER COURSES (§ 126*)—DISCHARGE OF SURFACE WATER—INJURIES TO ADJACENT PROPERTY—EVIDENCE.

Evidence held not to show that a railroad company, by the construction of a drain, caused unusual quantities of water to be carried from a culvert under the track to and on the lands of an adjacent landowner.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 126.*]

Action by Felix McCabe against the New York Central & Hudson River Railroad Company. Judgment for defendant on the merits.

William McCauley, for plaintiff.
Amos Van Etten, for defendant.

TOMPKINS, J. In 1879 the plaintiff became the owner of the property described in the complaint, and in 1881 he conveyed to the New York, West Shore & Buffalo Railway Company a right of way across the westerly portion of his premises, upon which that company constructed a double-track railroad, which is now owned and operated by the defendant. The westerly part of the plaintiff's premises is on a side hill sloping towards the Hudson river, and at the foot of the Haverstraw mountain, and the railroad tracks were placed upon an embankment 25 or 30 feet high, which was constructed on the slope of this mountain, and parallel with it. At the time the railroad was constructed, a culvert was built under the railroad track and through the embankment, for the purpose of carrying off the surface waters that might accumulate on the west side of the railroad embankment, and through that culvert these waters were carried to the east, and on to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the Hudson river, and prior to 1895 some of the water, passing through this culvert, flowed over and to some extent washed away the plaintiff's land.  In 1895 the plaintiff made a claim against this defendant for damage to his land on account of the flow of water over it from the culvert, and as a result of that claim the railroad company paid to the plaintiff in July, 1895, the sum of $500, $450 of which was on account of his claim for damages; the balance being the consideration paid for a strip of land 15 feet in width along the easterly line of the defendant's right of way, to enable it to construct a drain from the mouth of the said culvert to what is known as the "gully," the westerly end of which, and that adjoining the defendant's right of way, is located upon property owned by one De Noyelles, and through which gully the main body of water flowing through said culvert has flowed ever since the railroad and the culvert were constructed.

At the time of the settlement and payment of the sum of $500 in 1895, the plaintiff gave to the defendant a receipt, in the following language:

"In full settlement and satisfaction of all claims and demands whatsoever, which Felix McCabe has or may have against the West Shore Railroad Company and the New· York Central & Hudson River Railroad Company, or either of them, by reason of damages to land of said Felix McCabe, in the town of Haverstraw, Rockland county, N. Y., from the overflow of water, and the washing out of sand and other soil and materials adjoining the West Shore Railroad, for all expenses by reason of said overflow and washing out, and for conveyance of a parcel and for a general release.  Deed· and release to be executed."

Thereafter the plaintiff gave a deed to the defendant of the said 15-foot strip, and the defendant thereupon constructed a drain across said strip, and thereafter the waters from said culvert were carried through the said drain to the said gully.

In the year 1897, Daniel De Noyelles and others brought an action against McCabe, the plaintiff in this action, to eject him from certain premises, including a part of the said 15-foot strip which he (McCabe) had conveyed to the defendant, and in that action it was determined that a portion of the land which the plaintiff had by his deed conveyed to the defendant did not belong to him at the time· of the conveyance, but·was the property of Daniel De Noyelles and others.  In July, 1906, the De Noyelles Brick Company, the successor in title to Daniel De Noyelles and others began an action in the Supreme Court against the New York Central & Hudson River Railroad Company to enjoin and restrain it from collecting by means of drains, or otherwise causing any water to flow over, or to be discharged upon the De Noyelles property, and in that action it was found by the court that, prior to the construction by the defendant of the drain across the said 15-foot strip of land, sold by this plaintiff to the defendant, in 1895, the waters from the culvert were discharged upon the land of McCabe, and that, since the construction of said drain across the said 15-foot strip, the waters had been carried through said drain, and upon the De Noyelles Brick Company's property, and the court in that action enjoined the defendant from maintaining the drain from the mouth of the culvert over the said 15-foot strip to the De Noyelles'

property. Thereupon the defendant filled up the said drain, and leveled off the land upon which the same had been constructed, and the plaintiff's claim in this action is that when the said drain was filled up, and the land around it leveled off in 1907, the defendant constructed another drain leading to the plaintiff's premises described in the complaint in this action, thereby causing the waters from said culvert to be concentrated and to flow upon plaintiff's said premises.

The defendant's claim is that, after the judgment in the De Noyelles suit in 1907, it simply closed up the drain across the said 15-foot strip hereinbefore referred to, as it was required to do by the judgment in that action, and leveled off the ground, and left it in substantially the same condition that it was in in 1895, when the $500 settlement was made by the defendant with the plaintiff. If the defendant's contention is correct in this respect, then the plaintiff has no cause of action, because the settlement of 1895 included past, present, and future damages, and a conveyance to the defendant of the said 15-foot strip, to enable the defendant to provide a permanent means of taking care of the flow of water from the culvert, and, if that plan failed because the plaintiff had no title to the land thereby conveyed, he cannot have equitable relief without making a return or tender of the consideration paid on that settlement. That the plaintiff did not convey to the defendant a good title to the said 15-foot strip has been established by a judgment of the court, and the defendant has been forced to close up the drain and cease using that strip of land for the purpose of disposing of the flow of water from the culvert, and it seems to me that the maxims, that, when one comes into a court of equity seeking equitable relief, he must come with clean hands, and that he who seeks equity must do equity, are applicable to this phase of the case, and that, if the conditions at the time this suit was commenced were the same as they were at the time of the settlement in 1895, the plaintiff, in order to maintain this action, must first restore the defendant to the same position it was in at the time of the settlement in 1895. But the plaintiff claims that when the drain on the 15-foot strip was closed in August, 1907, the defendant opened another ditch or drain by which the waters were led from the culvert to other lands concededly owned by the plaintiff, thereby carrying the water in large volumes to plaintiff's said lands. If that is true, then the plaintiff is entitled to a judgment in this action, because it is not claimed that any such drain led the water to the plaintiff's premises prior to the settlement in 1895. This, then, presents a question of fact upon which the burden of proof rests upon the plaintiff.

In support of that claim the plaintiff himself testified that in August, 1907, a new drain was built, and, referring to the old drain, he said: "They filled it up and let the water come down on me." And again he testified that they (meaning the defendant) dug up the earth on both sides, and that that ditch led down through the middle of his property, and that, as a result, larger quantities of water flowed from the culvert over on his premises than had ever flowed there before. On cross-examination, the plaintiff gave the following testimony:

"Q. The question is: What is the difference between the present condition, and the condition as it was before you sold the land in 1895—what is the

difference in the manner in which the water is carried off? A. It is in bigger volumes than then. Q. Is that all? A. The quantity is more than it was before. Q. Does it run in the same place as it did in 1895, on your property? A. Yes, sir. * * * Q. Now, Mr. McCabe, you say that on August 28, 1907, the employés of the railroad company filled up this drain? A. Yes, sir. Q. And did they level off the ground at the mouth of the culvert? A. Yes, sir. Q. And that is what you mean when you say that they dug a drain towards your property—that they leveled off the land at the mouth of this culvert— is that right? A. Yes, sir."

It appears from the plaintiff's testimony that, shortly after that work was done, a very severe rainstorm occurred, and did some damage to plaintiff's premises. Plaintiff also testified as follows:

"Q. Do you want the court to understand, do you testify, that since August, 1907, there has been more water coming down by this house and over this highway than there has been in the last 15 or 20 years? has not the quantity of water been about the same, varying according to the size of the storm? A. Yes, sir. Q. So that the flow of water which comes down by this house and across the lot south of your property is the same flow of water, although the quantity may vary; that is, since you have lived there? A. Yes, sir."

The plaintiff also testified that, except for the digging of the ditch in 1907, the situation and condition was the same as it was in 1895, and that his only complaint against the defendant was on account of the defendant's alleged digging of the ditch in August, 1907.

Daniel De Noyelles, a witness for the plaintiff, testified that on the 28th or 29th of August, 1907, he went to the premises in question, and saw that the ditch that had carried the water over to the De Noyelles property had been filled up, and that a new ditch had been made to the plaintiff's property, which ran from the mouth of the culvert under the fence and along the McCabe property, which ditch was a foot or a foot and a half deep, and three or four feet wide, and that prior to that time he had seen that there was no such ditch leading to the plaintiff's property.

This is the substance of the testimony on the part of the plaintiff in support of his contention that in August, 1907, the defendant dug a ditch or drain from the mouth of the culvert to and along the plaintiff's premises, through and by which the waters from said culvert were carried to and cast upon the plaintiff's premises.

On the defendant's part, the track foreman, Lent, and Johnson, the supervisor of track, and three other witnesses in the employ of the defendant, all of whom were engaged in the work of filling up the De Noyelles ditch or drain in 1907, testified that they only leveled off the ground at the mouth of the culvert, and thereby stopped the water from going into the drain that had led to the De Noyelles property, and they each testified that no ditch or drain was excavated, and they specifically deny that any ditch or drain was dug leading to the plaintiff's property, or that any depression was made to receive the water and carry it towards the plaintiff's premises, and that the only work done was to level up the old ditch to the natural surface. Here, then, we have the testimony of five witnesses on the part of the defendant positively denying that any new ditch or drain was opened, and saying, in effect, that the only work done, in 1907, was to level up the old ditch, and restore the ground to its natural surface condition.

I think that the plaintiff has failed to sustain the burden of proof upon this question. He himself said, in effect, that what he meant by saying that the defendant had dug a new ditch or drain was that it had "leveled off the land at the mouth of the culvert," while Mr. De Noyelles' testimony, to the effect that he saw a drain or ditch leading to the plaintiff's premises, may be accounted for by the presence there of a depression, which the engineer and surveyor Wilson designated on his map as "apparently a former water course," and by the fact that, after the closing up of the De Noyelles drain and the leveling of the ground at the mouth of the culvert, some of the water would naturally flow down along and upon the plaintiff's premises, thereby making somewhat of a gully or ditch. At all events, I do not see how I can find that the plaintiff has a fair preponderance of the evidence in his favor on this question, in view of the positive testimony of the defendant's five witnesses that no such drain or ditch leading to the plaintiff's premises was excavated or made, in view of the plaintiff's own testimony to the effect that all that the defendant's employés did was to level off the land at the mouth of the culvert. See plaintiff's testimony, page 25.

My conclusions are that the plaintiff has failed to establish his claim that the defendant by the construction of a ditch or drain in August, 1907, caused large and unusual quantities of water to be carried from the railroad culvert to and upon plaintiff's premises, and that the conditions as they were in August or September, 1907, immediately after the De Noyelles ditch or drain was filled in and leveled up, were substantially the same as they were in 1895, when the settlement was had between the plaintiff and the defendant; and I accordingly direct judgment in favor of the defendant, dismissing the complaint upon the merits. Findings to be submitted.