after reciting the fact that he made a written application for insurance, that the company issued to him a policy, that he complied with all the terms thereof on his part to be performed, alleges that the company unlawfully attempted to forfeit the policy, and he asks to have it restored. The language used is certainly a plain and concise statement of plaintiff's alleged cause of action, and there is no possible chance for the defendant to be misled or confused by this pleading, and in considering a plea of this character all reasonable intendments will be indulged for its support. Lorillard v. Clyde, 86 N. Y. 385.

Following that rule, it seems to me that the complaint in question states a cause of action, and in many respects is a model pleading. This complaint alleges the making of the contract, the performance by the plaintiff of the terms thereof on his part to be performed, and the fact that the defendant has illegally attempted to forfeit the policy. What more could the pleader have done to make a plain and concise statement of his alleged cause of action? I think nothing, and that the complaint does state a cause of action. Bogardus v. N. Y. Life Ins. Co., 101 N. Y. 328, 4 N. E. 522; Murray v. N. Y. Life Ins. Co., 9 Abb. N. C. 309. Moreover, I do not think that the beneficiary named in the policy was a necessary party defendant. She had no actionable interest in the policy during the life of the plaintiff, and the action brought to compel the company to right an alleged wrong done the plaintiff is properly brought in his name. Shipman v. Protected Home Circle, 174 N. Y. 409, 67 N. E. 83, 63 L. R. A. 347; Hunt v. Pro. Sav. Life Assur. Soc., 77 App. Div. 342, 79 N. Y. Supp. 74; Sage v. Culver, 147 N. Y. 241, 41 N. E. 513.

It impresses me that the complaint sets forth facts sufficient to constitute a cause of action, and the demurrer must be overruled.

Judgment is directed in favor of the plaintiff on the demurrer, with costs, with leave to the defendant to withdraw the demurrer, and answer the complaint within 20 days on payment of costs.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

H. D. Hinnan, for appellant.
S. Mack Smith, for respondent.

PER CURIAM. Interlocutory judgment affirmed, with costs, upon the opinion of Clarke, J., delivered at Special Term, with leave to the defendant to plead over within 20 days, upon payment of the costs of the demurrer and of this appeal.

---

### McCABE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. July 29, 1910.)

1. RELEASE (§ 35*)—CONSTRUCTION—RELEASE OF FUTURE CLAIMS—"HAS OR MAY HAVE."

Plaintiff gave defendant railroad company a receipt reciting that it was in full satisfaction of all claims and demands whatsoever which plaintiff "has or may have" against defendant by reason of damages to plaintiff's land from the overflow of water, etc., for all expenses caused by the overflow, for the conveyance of a parcel of land over which the overflow was, and for a general release, and providing that a deed and release should be executed. Held, that the receipt only provided for the release of the existing claim for damages caused by the overflow, and not for future claims for such damages.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 82; Dec. Dig. § 35.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. WATERS AND WATER COURSES (§ 179*)—RESTRAINING OVERFLOW OF LAND—
   EVIDENCE—PROPERTY CONVEYED.

In a suit for equitable relief from overflow of plaintiff's land by de-
fendant railroad company, which was denied on the ground that plaintiff
was not entitled thereto because his title to the strip conveyed to the de-
fendants for the purpose of preventing the overflow had failed, evidence
*held* to show that plaintiff only intended to convey the title which he had
to the strip which both parties believed he owned, and not any land then
owned by another.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig.
§ 250; Dec. Dig. § 179.*]

3. RAILROADS (§ 67*)—PURCHASE OF LAND—CAVEAT EMPTOR.

The rule of caveat emptor that a purchaser buys at his risk as to title
and quality, in the absence of implied or express warranty, applies to a
railroad company buying land.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 153–158; Dec.
Dig. § 67.*]

4. WATERS AND WATER COURSES (§ 177*)—OVERFLOW OF LAND—RIGHT TO IN-
   JUNCTION.

After defendant railroad company had injured plaintiff's land by
wrongfully diverting water over it, it paid a certain sum to him in satis-
faction of the damages caused up to that time and in consideration of a
tract which both parties assumed that plaintiff owned and which was to
be used to prevent a further overflow, but there was no express warranty
of title. *Held*, that the fact that plaintiff did not own part of the land
conveyed would not prevent him from obtaining equitable relief for dam-
age caused by overflow after the settlement without first returning the
consideration for the land of which the title had failed, in absence of ex-
press or implied warranty of title.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig.
§§ 260–264; Dec. Dig. § 177.*]

5. WATERS AND WATER COURSES (§ 179*)—RESTRAINING OVERFLOW OF LAND—
   PLEADING—VARIANCE.

The complaint, in a suit against a railroad company for equitable re-
lief for injuring plaintiff's land by diverting water thereon, alleged that
defendant abandoned the use of an open drain leading southerly from
the east end of the culvert which drained it, constructed on land pur-
chased from plaintiff, and by means of which the water was discharged
upon adjoining land, and without plaintiff's consent has wrongfully con-
structed and maintained an open drain leading from the southerly end of
the culvert upon plaintiff's land so as to discharge thereon the water
flowing through it. Defendant admits, and the evidence shows, that it
abandoned the southerly drain and filled up the channel so as to divert
the water passing east through the culvert to the south and permit heavy
rainfalls to pass east through the culvert on plaintiff's land so as to cut
a channel through it and injure it. *Held*, that plaintiff was not bound to
show under the allegations of the complaint that defendant actually con-
structed a ditch to lead waters upon his premises, but it was sufficient
that defendant's abandonment of the southerly drain and change of the
land diverted the waters so as to produce a channel and injure his land,
and hence there was no variance because the evidence did not show that
defendant actually dug such channel.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig.
§ 247; Dec. Dig. § 179.*]

Hirschberg, P. J., and Jenks, J., dissenting.

Appeal from Special Term, Rockland County.

Action by Felix McCabe against the New York Central & Hudson
River Railroad Company. From a judgment of the Special Term

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(114 N. Y. Supp. 303) dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, THOMAS, and RICH, JJ.

William McCauley, for appellant.

Amos Van Etten, for respondent.

WOODWARD, J. In the year 1879 the plaintiff became the owner of the premises described in the complaint, and in 1881 conveyed to the New York, West Shore & Buffalo Railroad Company a right of way across the westerly portion of his premises for the purposes of a railroad, and that company subsequently constructed its roadbed upon an embankment some 30 feet high at or near the base of the mountain which rises abruptly at that point. The said railroad company's property is now operated under a lease by the defendant in this action. At the time this railroad was constructed, a culvert was built under the railroad track and through the embankment, for the purpose of carrying the surface waters that might be accumulated on the west side of the track, and through that culvert such surface waters were conducted to the east, and into the Hudson river. Prior to the year 1895 a portion of such waters passing through this culvert flowed over the premises of the plaintiff, and the evidence indicates that this was sufficient to cut a channel, and to wash away a portion of the plaintiff's lands. The learned court at Special Term has found that such trespass upon the lands of the plaintiff prior to 1895 constituted an unlawful act. Without discussing this question, it is sufficient to say that the plaintiff in 1895 made a claim against the defendant for damages growing out of such flowing over his premises, and that after negotiations this claim was settled on the part of the defendant by the payment of $500. At the time of such settlement the plaintiff delivered a receipt:

"In full settlement and satisfaction of all claims and demands whatsoever which Felix McCabe has or may have against the West Shore Railroad Company and the New York Central & Hudson River Railroad Company, or either of them, by reason of damages to land of said Felix McCabe, in the town of Haverstraw, Rockland county, N. Y., from the overflow of water and the washing out of sand and other soil and materials adjoining the West Shore Railroad; for all expenses by reason of said overflow and washing out; for conveyance of a parcel of land; and for general release, $500.00. (Deed and release to be executed.)"

Subsequently the plaintiff delivered a deed to the defendant of the parcel mentioned in the receipt, and the defendant entered upon the same and constructed an open drain across the said strip or parcel, and thereafter the waters from the said culvert were carried through the said drain to the gully upon the premises of one Daniel De Noyelles, whence it found its way into the Hudson river.

In the year 1897 Daniel De Noyelles and others brought an action against the plaintiff in this action, to eject him from certain premises, including a part of the said 15-foot strip which the plaintiff had attempted to convey to the defendant. In that action it appears to have been determined that the plaintiff did not have title to all of the said

15-foot strip; the boundaries appear to be slightly different from the boundaries fixed in said deed, and not reaching entirely to the gully, which is concededly upon the premises of the De Noyelles Brick Company, the successor in title of the said Daniel De Noyelles. Nine years later the De Noyelles Brick Company brought an action against the defendant in this action to enjoin and restrain it from collecting waters and precipitating them upon its premises by means of the open ditch through the said 15-foot strip. This action resulted in a judgment against the defendant, enjoining it from thus trespassing upon the De Noyelles Brick Company's premises, and thereupon the defendant closed up said open drain "and leveled off the ground, and left it in substantially the same condition that it was in 1895, when the $500 settlement was made by the defendant with the plaintiff," to quote the opinion of the learned justice who presided at the trial.

It is to be remembered that the learned justice has found as a conclusion of law that the act of the defendant in 1895 in accumulating waters and discharging the same upon the plaintiff was an unlawful act, and he tells us in his opinion that the defendant, after being denied the right to discharge its accumulated waters upon the brick company's premises, closed up its drain through the 15-foot strip and left the ground on the east side of the railroad, adjacent to the plaintiff's premises, "in substantially the same condition that it was in 1895, when the $500 settlement was made," and it is not disputed that within a space of a few months thereafter the plaintiff suffered great damages by reason of the flowing of his premises in the same manner that they were unlawfully flooded prior to the settlement in 1895, yet the learned justice tells us that if the "defendant's contention is correct in this respect, then the plaintiff has no cause of action, because the settlement of 1895 included past, present, and future damages," etc. Before passing to the further reasoning of the court, let us determine, if we may, whether it is true that the receipt given by the plaintiff in the settlement of 1895, covered "past, present, and future damages." That it covered past and present damages is not, of course, open to dispute; the language of the receipt—"all claims and demands whatsoever which Felix McCabe has or may have * * * by reason of damages to land * * * from the overflow of water and the washing out of sand and other soil and materials adjoining the West Shore Railroad; for all expenses by reason of said overflow and washing out," etc.—clearly speaks of claims and demands then existing. But where is the ground for holding that it contemplated future damages? The parties were certainly not dealing on the basis that there were to be any future damages, for it was provided that the plaintiff should convey a parcel of land for the purpose of affording a drain to convey the waters into the original channel, and the defendant took this conveyance, and for a period of more than 10 years the waters were conducted through the open drain upon this land conveyed by the plaintiff. The receipt, if it means anything, means that the claims and demands then existing were to be settled and disposed of, and that to avoid future liability the defendant would purchase the plaintiff's 15-foot strip of land and conduct the waters from

the culvert through this land to the gully on the premises of the brick company.

The respondent cites as authority for the construction which the learned court has put upon this receipt the case of Kirchner v. N. H S. M. Co., 135 N. Y. 182, 31 N. E. 1104, in which the instrument in terms absolved the defendant from liability for any demand or cause of action which the plaintiff might have against it, either upon contract or in tort, and especially for all trespasses committed by it, or damages for which it might be responsible to the plaintiff, and the court say:

"The cause of action in suit here then existed. and the release was, upon its face, sufficiently comprehensive to include it within the scope of its operation."

How this in any manner supports the construction here under consideration we are at a loss to understand; it merely holds that a cause of action in being at the time of a general release is included within such general release, though the parties may not have had the particular case in mind at the time. Nor does the case of Murphy v. City of New York, 190 N. Y. 413, 83 N. E. 39, aid the respondent, for the court quotes with approval the rule as asserted by the Supreme Court of Massachusetts that the intent is to be sought from the whole instrument, "and where general words are used, if it appears by other clauses of the instrument * * * that it was the intent of the parties to limit the discharge to particular claims only courts in construing it will so limit it."

The receipt here in question is speaking of the present; it limits the release to claims and demands for damages to lands "from the overflow of water," and refers to the "expenses by reason of said overflow," clearly referring to an overflow which has occurred. If we read the word "may" as of the same force and effect as "can," we should not find ourselves bound to say that the release referred to the future damages which the plaintiff has concededly suffered. If the receipt had declared that it was "in full settlement and satisfaction of all claims and demands whatsoever which Felix McCabe has or can have against the West Shore Railroad *. * * from the overflow of water and the washing out of sand and other soil and materials," and for "all expenses by reason of said overflow and washing out," it would not materially change the construction; it would mean, as it means now, that all claims and demands growing out of such overflowing, whether presently asserted or not, shall be included in the release. It does not mention the future in any manner; it would never occur to any one reading this release that it was intended to give the defendant a permanent license to flood his lands for the sum of $500, and, as the language used is not ambiguous, there is no occasion for introducing words which the parties themselves did not intend to use.

But the learned court suggests, in connection with the matter we have been discussing, that the conveyance which was made to the defendant for the purpose of taking care of the waters from this culvert was of importance, and that:

"If that plan failed because the plaintiff had no title to the land thereby conveyed, he cannot have equitable relief without making a return or tender

of the consideration paid on that settlement. That the plaintiff did not convey to the defendant a good title to the said 15-foot strip has been established by a judgment of the court, and the defendant has been forced to close up the drain and cease using that strip of land for the purpose of disposing of the flow of water from the culvert.  *  *  *  And that, if the conditions at the time this suit was commenced were the same as they were at the time of the settlement in 1895, the plaintiff, in order to maintain this action, must first restore the defendant to the same position it was in at the time of the settlement in 1895. But the plaintiff claims that when the drain on the 15-foot strip was closed in August, 1907, the defendant opened another ditch or drain by which the waters were led from the culvert to other lands concededly owned by the plaintiff, thereby carrying the water in large volumes to plaintiff's said lands. If that is true, then the plaintiff is entitled to a judgment in this action, because it is not claimed that any such drain led the water to the plaintiff's premises prior to the settlement in 1895. This, then, presents a question of fact upon which the burden of proof rests upon the plaintiff."

And the learned court then holds, upon a conflict of evidence, that the plaintiff has failed to show that the defendant constructed a ditch to lead the waters upon the plaintiff's premises, and this is attempted to be justified by holding the plaintiff to a very rigid construction of his complaint.

We are of the opinion, however, that the learned court has been led into error in an effort to adjust this case to individual conceptions of equity, apart from well-established principles. In the first place, it is certainly too broad a proposition to say that, because the plaintiff conveyed a parcel of land to the defendant for a particular purpose, in connection with his settlement for past damages, he cannot maintain an action without restoring "the consideration paid on that settlement." It seems to be conceded that $450 of the $500 was paid for damages and expenses in connection with the overflow, and that only $50 of the amount had anything to do with the purchase of the 15-foot strip. At most, therefore, there was only about $50 which by any possibility the plaintiff was bound to tender. But it does not appear that the title has fully failed; there is merely a portion of the 15-foot strip which is held not to have been owned by the plaintiff, and just what portion does not appear. No fraud is alleged on the part of the plaintiff; no one suggests that there was any overreaching on his part, or that he had any reason to doubt that he was the owner of the 15-foot strip at the time he conveyed the same. The plaintiff did not contract to give a warranty deed; did not represent that he had title to all of the land necessary to reach the gully. His attorney wrote to the defendant that:

"For this sum he will convey to you such land as is necessary to enable you to turn the culvert into its original channel."

But this language is to be construed in the light of the negotiation then under way for the settlement of the plaintiff's damages, and the providing against future damages. Both parties assumed that the plaintiff owned a certain strip of land 15 feet wide along the defendant's right of way, which land was necessary to the relieving of the defendant's embarrassment in taking care of the waters accumulated at its culvert, and the proposition was to furnish this strip of land in connection with the settlement. It would be a forced and

unnatural construction, and one clearly not within the contemplation of the parties, to hold that the plaintiff intended to purchase any part of the land necessary for the use of the defendant; he simply proposed to convey that which he already had, and which should be "necessary to enable you to turn the culvert into its original channel," and this is what he attempted to do, and what he did so far as he was able, and for more than 10 years the defendant acted under the title thus secured and was relieved from incurring further damages to the plaintiff. We have never heard it claimed that the defendant, a railroad company, was above the maxim of caveat emptor, or the rule of the common law that a purchaser of property buys at his own risk as to title and quality, unless the seller gives a warranty or the law implies one (Wright v. Hart, 18 Wend. 449, 452), and no such warranty exists in this case. The defendant in 1895 was a trespasser upon the rights of the plaintiff. The parties met and settled for the damages up to that time, and the plaintiff offered to sell the land which both assumed to own, and the defendant purchased it, taking the risk of the title being good, unless the contract between them provided otherwise. What is there about this transaction which should prevent a court of equity dealing with the situation as it is presented to-day?

The suggestion that the pleadings are not broad enough to justify relief to the plaintiff is, in our opinion, wholly untenable. The complaint alleges the ownership of the land in question and other formal matters, and in its fourth paragraph avers that:

"On or about the 28th day of August, 1907, the defendant discontinued and abandoned the use of the open drain leading southerly from the easterly end or outlet of said underground drain or culvert, along and within the easterly line of said railway, and by means of which the said waters were conveyed to and discharged upon the adjoining lands of the said, the De Noyelles Brick Company, as aforesaid, and without the permission or consent of the plaintiff, and in violation of his right in the premises, wrongfully and unlawfully constructed, and has ever since, in like manner, wrongfully and unlawfully maintained, an open drain leading from the easterly end or outlet of said underground drain or culvert, to and upon the plaintiff's said premises, and by means of which the waters flowing through said underground drain or culvert have been, and now are, wrongfully and unlawfully discharged upon plaintiff's said premises, as hereinafter set forth."

And then the complaint alleges the impounding of the waters flowing from the mountain side on the west of the railroad and their discharge at different times upon the lands of the plaintiff through the said culvert and drain. There was evidence in the case sufficient to support a finding that the defendant had actually done just what is alleged in the complaint; that it had physically closed the drain to the southward, and had opened a new drain to the eastward, substantially in the same location that it had existed prior to the settlement in 1895. It is not now questioned that the defendant did close the drain running in a southerly direction along the east line of the railroad, which was the one constructed upon the 15-foot plot; but the defendant introduced witnesses to testify that no new ditch was constructed easterly from the terminus of the culvert, and the learned court at Special Term has found upon this evidence that the "defendant did not dig a drain or ditch from the mouth of the culvert on the east side to

lead the water flowing through the culvert to the plaintiff's premises," and that "the evidence in this case fails to show that by this culvert and drain surface waters were collected by the defendant and discharged in a single channel upon plaintiff's land," and it is claimed that this is conclusive upon the plaintiff because the exact facts have support in the evidence, and that the complaint alleged such digging of a ditch.

The complaint, it should be remembered, does not aver that the defendant through its servants went upon the ground and dug a ditch which led the waters to the defendant's premises in a single channel. It says that the defendant abandoned its drain leading southerly—the drain which turned the stream from an easterly direction as it came through the culvert and diverted it to the south along the line of the railroad—"and without the permission or consent of the plaintiff, and in violation of his right in the premises, wrongfully and unlawfully constructed, and has ever since, in like manner, wrongfully and unlawfully maintained, an open drain leading from the easterly end or outlet of said underground drain or culvert, to and upon plaintiff's said premises," etc. The defendant admits that it abandoned the southerly drain; that it filled up the channel and leveled off the ground and left the situation about as it was prior to the settlement of 1895. That is, it blocked up the channel which deflected the stream passing easterly through the culvert to the south, and left the rushing torrent created by heavy rainfalls to pass through the culvert in an easterly direction toward the plaintiff's premises, in substantially the same manner that it had done prior to the settlement in 1895, and it clearly appears from the case that at that time the water had cut a channel through the plaintiff's premises, which had only been partially filled up during the years which it has been under cultivation. If the defendant did not, therefore, with pick and shovel, construct a new drain to the eastward, leading upon plaintiff's premises, it produced a condition, by closing the southerly drain, which could have no other effect than to reopen and enlarge the channel which had been originally unlawfully created.

The evidence clearly discloses that the waters coming through this culvert during a storm were capable of forcing a channel; it is a matter of common knowledge that a rapidly flowing current of water will find a way of escaping in the absence of stronger barriers than sand and ordinary soil, and, when the defendant produced a condition which must produce a new channel, it, in practical effect, constructed that channel. The learned court at Special Term concedes in his opinion that the defendant closed the one channel and left the situation "in substantially the same condition that it was in 1895, when the $500 settlement was made," and at that time he finds that the defendant was unlawfully discharging the waters through this culvert upon the plaintiff's lands. Where, then, is the defect in the plaintiff's case now? It is not necessary to the plaintiff's case that he should show that the defendant actually constructed a ditch for the purpose of leading the waters upon his premises in a single channel; he has come within the fair intent of his pleadings when he has shown that

the defendant has taken such action that the channel has been produced in the natural course of events, and that he has suffered by reason of the discharge of the impounded waters upon his premises.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the event.

THOMAS and RICH, JJ., concur. HIRSCHBERG, P. J., and JENKS, J., dissent.