UNION CENTRAL LIFE INSURANCE CO., APPELLANT, *v.* AUDET ET AL., RESPONDENTS.

(No. 7,008.)

(Submitted March 6, 1933. Decided April 5, 1933.)

[21 Pac. (2d) 53.]

*Mr. Merle C. Groene,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Aaron R. Shull*, for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This controversy arose out of a contract entered into by plaintiff and defendants respecting the purchase, on the amortization plan, of 516.44 acres of land in Fergus county. The contract is very lengthy, and only such parts of it as are deemed applicable to this decision will be noticed.

Plaintiff agreed to sell the land to defendants in consideration of $17,336.38, with interest on all deferred payments from January 1, 1928, and of the covenants to be performed by defendants; the payment of the purchase price in actual money as well as the faithful performance of each and every of the covenants and agreements in the contract being expressly declared to be a condition precedent and of the essence of the contract. The purchase price was payable as follows: $338.36 on November 1, 1928; and the remainder in twenty-six annual installments of $1,329.91 each, on November 1 of each year, commencing with the year 1929. Defendants were to pay all taxes.

It was agreed between the parties that the title to and the ownership and possession of the property, including all buildings and improvements thereon, should remain in the plaintiff until the full amount of the purchase price be paid. The defendants agreed immediately upon the execution of the contract to enter upon and occupy and farm the premises under the provisions of the contract, with the express understanding that such occupancy and possession by them should be deemed the possession of the plaintiff, that the title, ownership and possession of all improvements made and all crops raised on the premises should be and remain in the plaintiff, and that the defendants should have no interest therein as against the plaintiff, and no right to dispose of the same, but that the plaintiff should dispose of all crops as provided in the contract.

"The second party" [defendants] "shall have the right to so occupy and farm said premises as long as the second party shall perform all the covenants and agreements hereinafter

mentioned on the part of the second party to be performed, and no longer."

The plaintiff reserved the right to enter upon the premises at any time without interference "for the purpose of inspecting the premises, improvement of crops, or performing any act by the second party to be performed remaining undone, or for any lawful purpose whatsoever."

It was agreed that there were 329 acres of tillable land of good quality, the remainder being grazing land, and that at the time of the contract 323 acres were under plow and cultivation. The contract prescribed a farming system and cropping plan which should be followed out by the defendants, who were to farm and crop a total of not less than 320 acres "on the two-year fallow plan."

The defendants agreed, among other things, neither to remove nor permit to be removed from the premises any part of the crops raised thereon except for delivery of the same for the plaintiff, and to follow the plaintiff's directions as to the delivery. It was stipulated that failure on part of defendants to perform any of the agreements of the contract with reference to the care of or farming the premises or raising, securing or delivering the crops, would constitute a default under the contract.

It was provided that one-half of the amount received by plaintiff from the sale of the crops raised each year should be applied on the taxes and purchase price of the lands, but that nothing contained in the contract should "extend the maturity of any amount to be paid hereunder beyond the date specified," nor affect in any way the obligation of the defendants to pay the same promptly when due. It was stipulated that the plaintiff might sell and dispose of the crops whenever it deemed it necessary or expedient to do so, and only after final settlement of the year's transactions should the plaintiff "set apart and transfer" to the defendants "the remaining portions and shares of said crops." Special provisions were made governing the annual "final settlement." Extensive stipulations were made under the head of "defaults and remedies." Among others,

the defendants agreed that at any time after their default, in any particular, upon request of the plaintiff, they would remove peaceably from the premises and surrender up the entire and exclusive possession of the real estate and all improvements and crops thereon; it being expressly understood and agreed that resumption of possession by plaintiff should not operate to abrogate, rescind or cancel the contract in any degree. Many other provisions were made amplifying plaintiff's rights in this respect.

It was provided that no failure on the part of plaintiff to exercise any of its rights should be deemed a waiver thereof. Time was to be deemed of the essence of the contract.

Because of the alleged failure of defendants to comply with the terms of the contract, plaintiff made fruitless efforts to cause the defendants to remove from the premises in the early part of 1932. On May 24, 1932, plaintiff commenced this action by filing a complaint, wherein it prayed for the issuance of a restraining order against the defendants.

Plaintiff alleged, *inter alia,* its ownership and right of possession to the lands, and the execution of the contract which was annexed as "Exhibit A." It is averred that the defendants did not comply with the contract with respect to the annual payments; that there remained unpaid a balance of $274.99 upon the amount due November 1, 1929; that they paid only. $59.08 of the $1,329.91 due November 1, 1930, and but $44.34 of the $1,329.91 due November 1, 1931; that they did not promptly report on the harvest and threshing each year, and for the year 1931 had failed to account for approximately 544 bushels of wheat; that, while the defendants agreed that their occupancy and possession of the real property should be deemed the possession of the plaintiff, and that at any time they were in default they would upon the request of the plaintiff peaceably remove from the premises and surrender up the entire and exclusive possession thereof, etc., and although the plaintiff on April 22, 1932, demanded of them that they surrender the possession of the property, they refused, and still refuse, to do so, and unlawfully hold and continue in the possession of the

premises without the permission of the plaintiff and against its will; that ever since April 22, 1932, defendants have wilfully and unlawfully trespassed upon the property; that the tillable lands should be seeded to crop for the year 1932; that the remainder of the land, being pasture land, has a value for grazing purposes, and upon the lands are a residence and numerous other farm buildings which likewise have a value; that defendants have continually threatened to remain in possession of the land as long as they desire to do so, have ignored the terms of the contract, have refused to abide by its provisions, and their wilful and wrongful trespasses upon the lands are continuous in their nature; that the defendants are and each of them is wholly insolvent and unable to respond in damages to the plaintiff; that a multiplicity of suits will be necessary to protect and enforce the plaintiff's rights unless an injunction can be obtained to protect plaintiff therein; that by reason of the foregoing the plaintiff has no adequate remedy at law; that, unless an injunction is issued to protect the plaintiff's rights, the farm lands will not be planted to crop, the "pasture will be consumed," and waste will be committed upon the buildings and premises, all to plaintiff's great and irreparable damage "without an opportunity to collect one cent in damages from the defendants."

Plaintiff, through its agent, filed an affidavit in support of the complaint, in which it is averred, among other allegations, that the farm land has not been planted to crops, and, unless an injunction is issued, plaintiff will be deprived of the value of a crop during the year 1932.

Upon the complaint and affidavit, the court issued an order to show cause directed to the defendants, requiring them to show cause, if any they had, why an injunction should not issue requiring them to refrain from in anywise interfering with plaintiff's occupancy and possession of the premises; in the meantime it was ordered that the defendants be restrained from committing waste thereon. At the time fixed, the defendants moved to quash the restraining order upon the ground that the complaint and affidavit in support thereof do

not state facts sufficient to constitute ground for awarding any injunctive relief. The court, after hearing testimony briefly, made an order sustaining the motion to quash, and plaintiff appealed.

The testimony was very brief. One of the defendants testified that the reason the land had not been put into crop was that plaintiff had hindered him by bringing suits; that plaintiff had brought one suit in April and another in May, 1932, in a justice's court at Lewistown, but these two suits were dismissed. He said that he had most of the seed wheat necessary to put the land in crop. The summer-fallowing would take him about ten days, possibly a little longer; it would all depend on the rain and the seeding. Weather permitting, he could put in the crop in very short order. He had arranged with two men to assist him. He said: "In 1928 as I recall, I turned over to the plaintiff wheat of the value of about $2,800. In 1929, I would say off hand pretty close to $1,500, possibly more. In 1930 we didn't raise much, but the plaintiff got half of it, about 135 bushels, and we fed that." Plaintiff's representative had told him that the wheat was not worth much and to go ahead and feed it. As to the 1931 crop, plaintiff's representative, the witness said, did not care what defendants did with it; he was pretty sure the plaintiff got half of it.

Upon the facts, the allegations of plaintiff's complaint, admitted by motion to quash, and the allegations of the affidavit, none of which was denied in any substantial particular, the defendants had failed to comply with the terms of the contract during the years 1930 and 1931, if not in 1929. Their excuse as to why they had not put in any crop in 1932 is of no avail.

At the outset we meet the question whether under the contract the relation of landlord and tenant existed between plaintiff and defendants, or whether the defendants were merely occupying the premises as croppers. The actual relation between the parties must be ascertained from the contract itself unless its import is doubtful; then the actions of the parties

may furnish a satisfactory guide for its interpretation. (*Dolin* v. *Wachter*, 87 Mont. 466, 288 Pac. 616.)

It is true, as counsel for defendants argues, that the contract ▇ is one for the purchase of lands, but by specific provisions the defendants were entitled to the occupancy of the premises only under the conditions specified. When the contract is considered in its comprehensive view, the answer is clear. He who drew the contract made a studied, and we think a successful, effort to determine the status of the second parties thereto, the defendants, to be that of croppers; they did not have any estate in the land nor any interest therein. They had the right to purchase the premises upon compliance with the contract, but the contract specifically made their occupancy that of croppers only.

This contract is not like that considered in *Cook-Reynolds Co.* v. *Wilson*, 67 Mont. 147, 214 Pac. 1104, nor that in *Dolin* v. *Wachter*, supra, in which the difference between a tenant and a cropper is considered. Here, as in *Wells-Dickey Co.* v. *Embody*, 82 Mont. 150, 266 Pac. 869, possession and right to possession of the premises and title to the crops were to remain in the first party, the plaintiff; the division of the crops was to be made by plaintiff, and then only upon final settlement at the end of the year. In this situation the defendants were in legal aspect but "sublimated employees" in so far as their occupancy of the premises is concerned.

One may say, as respects the defendants, that the contract ▇ is a harsh one. If this be true, we cannot disturb it on that account. Being a valid contract, it is our duty to enforce it. "Parties have a perfect right to make harsh provisions in their contracts if they see fit" to do so. (*Leigland* v. *Rundle Land & Abstract Co.*, 64 Mont. 154, 208 Pac. 1075, 1079, quoting from *Davis* v. *LaCrosse Hospital Assn.*, 121 Wis. 579, 99 N. W. 351, 359, 1 Ann. Cas. 950.) "The duty of the court is to enforce contracts, not to make new ones for the parties, however unwise the terms may appear." (*Wheeler* v. *James*, 70 Mont. 37, 223 Pac. 900, 903.)

The contract having been breached by the defendants, and ■ they being in default, the plaintiff had the right under its specific terms to eject them from the premises. Certainly after demand was made by plaintiff upon defendants for the possession of the premises, they were no longer rightfully in the occupancy thereof. (*Kelly* v. *Roberts*, 93 Mont. 106, 17 Pac. (2d) 65.) They were trespassers.

The general rule is that a court of equity will not exert ■ its power to enjoin a trespass when there is an adequate remedy at law. (*Thrasher* v. *Hodge*, 86 Mont. 218, 283 Pac. 219.) It will not enjoin a mere trespass. (*Musselshell Cattle Co.* v. *Woolfolk*, 34 Mont. 126, 85 Pac. 874; *King* v. *Mullins*, 27 Mont. 364, 71 Pac. 155.)

It is the rule also that "title to or right of possession of real estate is not triable by injunction." (*National Bank of Montana* v. *Bingham*, 83 Mont. 21, 269 Pac. 162, 167.) And "an injunction will not be used to take property out of the possession of one party and put it into that of another." (*Lacassagne* v. *Chapuis*, 144 U. S. 119, 12 Sup. Ct. 659, 661, 36 L. Ed. 368; *Blinn* v. *Hutterische Society of Wolf Creek*, 58 Mont. 543, 194 Pac. 140.) Nevertheless relief will be granted by injunction to protect the owner of land whose right to possession is unquestioned "against a repetition of wanton trespasses for which adequate compensation cannot be given by way of damages," as this court declared in *City of Bozeman* v. *Bohart*, 42 Mont. 290, 112 Pac. 388, 391, following *Lee* v. *Watson*, 15 Mont. 228, 38 Pac. 1077. There is no special magic in the word "wanton" in this connection.

While not material in this case, the mere existence of a doubt as to the title does not of itself constitute a sufficient ground for refusing an injunction. (*Boyd* v. *Desrozier*, 20 Mont. 444, 52 Pac. 53; *Thrasher* v. *Hodge*, supra.)

The ancient doctrine against the use of the writ to enjoin ■ trespasses has been modified with the passing years. In his monumental work on Equity Jurisprudence, Mr. Pomeroy observes that trespasses to realty, when they consist of single acts, or occasional acts which are temporary in their nature and

effect, and which are of such nature that damages as estimated by a jury will be adequate restoration, will not be enjoined; on the other side, "speaking affirmatively of the many cases in which trespasses to realty are enjoined," he divides them into four classes, two of which are: (2) When the legal remedy is inadequate because the trespass is continuous, or because repeated acts of wrong are done or threatened, although each of these acts, taken by itself is not destructive; (3) when the legal remedy is inadequate because the defendant is insolvent. (5 Pomeroy's Equity Jurisprudence, 2d ed., sec. 1908, and see exhaustive note to *Sanders* v. *Boone,* 154 Ark. 237, 242 S. W. 66, 32 A. L. R. 461, 464 et seq.) The present case falls directly within divisions 2 and 3. Here, upon the showing made, the legal remedy is inadequate because the trespass is continuous and the defendants openly assert that they intend to remain in the possession of the premises, to which they have no right of occupancy; and the defendants are insolvent.

Whether an injunction should be issued to enjoin trespass should be tested in the light of the adequacy of the legal remedy. (*Sankey* v. *St. Mary's Female Academy,* 8 Mont. 265, 21 Pac. 23; *Lee* v. *Watson,* supra; *Musselshell Cattle Co.* v. *Woolfolk,* supra; 5 Pomeroy's Equity Jurisprudence, 2d ed., sec. 1907.)

Repetition of the trespass, necessitating a multiplicity of actions, in itself may render the legal remedy inadequate. (Note to *Sanders* v. *Boone,* supra; *Thrasher* v. *Hodge,* supra; *Musselshell Cattle Co.* v. *Woolfolk,* supra; 5 Pomeroy's Equity Jurisprudence, 2d ed., sec. 1910.)

Upon plaintiff's showing, the insolvent defendants had continually trespassed upon plaintiff's premises at least since April 22, and were threatening to continue such trespasses indefinitely, to plaintiff's great damage. The occupancy of the defendants here is like unto that of a servant who refuses to remove from the premises after he is discharged by the master. (See *Mackenzie* v. *Minis,* 132 Ga. 323, 63 S. E. 900, 905, 23 L. R. A. (n. s.) 1003, 16 Ann. Cas. 723.) In the case last cited it is cogently set forth that it is better for the

courts to interfere by injunction when a trespasser boldly asserts his intention to continue in possession, than to cast upon the owner of the premises a resort to force, likely to result in physical combat. The court quoted from *Borough of Stamford* v. *Stamford Horse R. Co.,* 56 Conn. 381, 15 Atl. 749, 1 L. R. A. 375, as follows: ''When the choice is between redress or prevention of injury by force and by peaceful process, the law is well pleased if the individual will consent to waive his right to the use of force and await its action. Therefore, as between force and the extraordinary writ of injunction, the rule will permit the latter.''

We have decided this case upon the issues as presented by opposing counsel in briefs and oral argument. No argument has been presented by either side as to the form or technical sufficiency of the complaint; none has been presented as to whether plaintiff in drafting his pleading had in mind an action at law supplemented by resort to the exercise of the equitable powers of the court, or whether the complaint was designed to be one solely in equity.

Upon the facts pleaded, construing the allegations of the complaint with the provisions of the contract, it is plain that the plaintiff was entitled to the issuance of an injunction *pendente lite,* and the court erred in granting the motion to quash.

The order is reversed and the cause remanded for further proceedings.

ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.

MR. JUSTICE ANDERSON, being disqualified, takes no part in the foregoing decision.