SCHNEIDER, APPELLANT, *v.* NELSON, RESPONDENT.

(No. 8,101.)

(Submitted October 16, 1940.   Decided December 10, 1940.)

[110 Pac. (2d) 972.]

*Mr. S. J. Rigney,* for Appellant, filed an original brief, and, jointly with Mr. E. J. McCabe, of Counsel, a supplemental one; *Mr. McCabe* argued the cause orally.

*Mr. Horace W. Judson,* for Respondent, submitted an original and a reply brief.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This is an action wherein plaintiff seeks to recover from the defendant one-fourth of the wheat raised on certain state lands during the year 1938, or the value thereof. Trial was had before the court sitting without a jury, and judgment was entered for the defendant. The facts are as follows:

In 1926 the plaintiff entered into a contract with the State Board of Land Commissioners for the purchase of the lands described in the complaint and situated in Glacier county. A certificate of purchase was issued to him, and in 1935, while it was in effect, the plaintiff entered into an oral agreement with the defendant whereby the latter agreed to farm this land under a share-crop arrangement. Under the agreement the defendant was to retain three-fourths of the crop and deliver to the plaintiff one-fourth of it at a local grain elevator. In accordance with this agreement crops were produced and divided during the years 1936 and 1937. Certain summer fallowing was done by the defendant in each year.

In August, 1937, plaintiff's certificate of purchase was cancelled by the State Land Board because of delinquencies in payments. However, as noted above, that year's crop was divided between the plaintiff and defendant in accordance with the previous oral agreement. There is no evidence that any specific arrangements for the farming of the land in 1938 were made between the parties prior to the time the crop was planted. In 1938 the defendant farmed the land and harvested a crop, and demand was made on him by the plaintiff for the one-fourth share of the crop at the time it was being harvested. He refused to turn over any share to the plaintiff but instead the testimony is that he deposited with the operator of the local elevator a check in the sum of $70 with directions to turn it over to the plaintiff if the latter would consent to such a settlement. Apparently the plaintiff refused to accept it.

Some time in August of 1938 the defendant called at the office of the State Board of Land Commissioners at Helena, and there is some testimony on his part that he was in possession of the land by virtue of an arrangement made at that time whereby he was to farm the land and pay a certain rental to the state—either fifty cents per acre or one-fifth of the crop. In October of 1938, after the crop had been harvested, the state leased the land in question to the plaintiff and, although the lease was not signed until in October of 1938, according to its terms it was to be effective as of February 28, 1938. In Feb-

ruary, 1939, the defendant again called at the State Land Commissioner's office and at the time he was there a letter was written by the commissioner to counsel for the plaintiff and a copy of it was given to the defendant. That letter helps to explain the fact situation here and, so far as pertinent, is as follows:

"Mr. Schneider [plaintiff] purchased from the State the land described above under contract No. C–329, and after a long period of delinquency, this certificate was cancelled August 1, 1937.

"It was my understanding from conversation with both Mr. Schneider and yourself that Mr. Schneider understood that because of the eighteen months redemption right, he was authorized to use this land, and under this supposition he subleased the land to Mr. Albert Nelson [defendant] for the 1938 season, without securing a lease from the State.

"Other applications were received for lease on the land, and ultimately Mr. Schneider, together with yourself, visited the State Land Office and a lease was made to him.

"In order to protect Mr Schneider through the period of redemption and also to legalize the use of this land during the year 1938, a lease was made to him covering that period, and upon representation by yourself and Mr. Schneider as to the rental which he was to receive from the land during the year 1938, and after discussing with you Section 1805.32 of the Revised Codes of Montana of 1935, relating to subleasing, it was agreed that the rental for the year 1938 should be $70.00, and this seems to have been the payment that was made to the State in December, 1938.

"It seems that it was understood with the International Elevator of Cut Bank that Mr. Schneider's share of the crop raised on this land was to be held for payment of the 1938 rental.

"However, this rental has been paid in cash by yourself and therefore there is no occasion for the retention by the elevator of the grain placed in the elevator to protect Mr. Schneider's rental to the State.

"It seems that there is some controversy between Mr. Nelson and Mr. Schneider as to the amount of rental which Mr. Nelson is to pay Mr. Schneider for the use of this land during the year 1938.

"However, it would seem that Section 1805.32 of the Revised Codes of Montana of 1935, would clearly define the amount which Mr. Schneider should receive for the use of the land under his lease from Mr. Nelson as $70.00 as this is the amount which you paid to the State for Mr. Schneider for the 1938 rental on this land, and it would seem unnecessary for there to be any expense to anyone concerned in this transaction.

"Mr. Nelson has requested that we advise him as to the status of this case in order that he may make payment to Mr. Schneider, and we are handing him a copy of this letter, as he is in the office at the present time, and are also enclosing an extra copy in order that you may forward the same to Mr. Schneider."

The court in its judgment found that the complaint failed to state a cause of action. This finding presents a situation where in effect a demurrer was sustained after the cause had been heard on the merits. The argument in support of the court's findings as to the sufficiency of the complaint concerns chiefly two points. The first as to the sufficiency of the description of the wheat in question, and the second the demand for the wheat.

The complaint alleges and the evidence shows that the wheat, delivery of which is being sought, or its value, was grown on the land in question. The testimony of the defendant himself indicates the total amount of the wheat grown from which the plaintiff's share may be computed. There is some ambiguity as to the exact location of the wheat at the time the demand was made, but we do not believe this is fatal to the cause.

As to the sufficiency of the demand, the allegations of the complaint are ample in that respect. It is alleged that repeated demands for delivery of the wheat had been made upon defendant; that plaintiff had made four trips to defendant's ranch to recover possession of the wheat, and, also, had

written letters and hired an attorney to institute an action for the recovery of the wheat or its value. In addition to these allegations, there is testimony on the part of both parties that plaintiff and his counsel visited the defendant at the time the crop was being harvested, and that demand was made at that time for delivery of one-fourth of the crop. We hold that the complaint sufficiently stated a cause of action.

Defendant takes two positions,—the first that he held the land during the 1938 crop season by virtue of an arrangement he made with the State Land Board. His testimony on this point is vague. He admits on the stand that he did not tender to the state the rental which he said he was to pay, i. e., either fifty cents an acre or one-fifth of the crop. On the other hand, he did tender to the plaintiff, or attempt to tender to him, a check in the sum of $70. The two positions are inconsistent and nothing in the evidence will sustain his contention that he held as a tenant of the state.

His second position is that plaintiff had no interest in the land sufficient to maintain any claim on his part for rental and that if he did have an interest sufficient to entitle him to a right to claim any rental from defendant, the amount he could claim was limited to the $70 referred to in the letter heretofore set out, that being the amount plaintiff was required to pay under his lease with the state. As to his first position on this argument there can be no question. The state recognized a right in plaintiff to the lands in question. That this is true is apparent in the letter above referred to and by the lease executed by the state in October, 1938, leasing the property to the plaintiff for the period in question. Defendant himself recognized this right in plaintiff by attempting to tender to him the sum of $70 through the elevator operator.

The only other question concerns an interpretation of section ▇ 1805.32, Revised Codes, as amended by Chapter 14 of the Laws of 1937: "If a lessee sub-leases state lands on terms less advantageous to the sub-lessee than the terms given by the state, his lease shall be subject to cancellation by the State Board of Land Commissioners after hearing duly held on the facts

involved. In any case where state land is sub-leased by any lessee of state lands such sub-lease shall be illegal unless a copy of the sub-lease has been filed with the state land office and approved by the commissioner of state lands and investments.''

The agreement between the parties gave defendant the status of a share cropper, and not that of lessee or sub-lessee. (See *Gibbons* v. *Huntsinger,* 105 Mont. 562, 74 Pac. (2d) 443, and cases therein cited.)

There is ample evidence to support plaintiff's contention that defendant was holding over under the original oral agreement entered into in 1935. Defendant cropped the land in 1936 and 1937, and the crop in both years, as has been said, was divided according to the 1935 agreement. Nothing indicates that any other arrangement had been made for 1938. The evidence admits of no other conclusion than that the judgment is contrary to the law and the evidence, and that the plaintiff is entitled to a judgment for one-fourth of the wheat raised on the land in question in 1938, or, in lieu thereof, its value as of the date delivery should have been made.

The district court may, if it deems necessary, take further testimony for the purpose of fixing the value of one-fourth of the crop and determining the extent, if any, to which plaintiff has been damaged by defendant's acts. (*First National Bank* v. *Perrine,* 97 Mont. 262, 33 Pac. (2d) 997; sec. 9406, Rev. Codes.)

The judgment is reversed and the cause remanded with directions to proceed in accordance with this opinion.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, MORRIS and ARNOLD concur.

Rehearing denied February 25, 1941.