(No. 7209.   February 23, 1946.)

HAROLD H. JOHNSON, NORTH AMERICAN COM-
PANY, a Montana corporation, GEORGE HERBERT
JOHNSON and MARTHA ELMINA JOHNSON, hus-
band and wife, Plaintiffs-Respondents, v. TWIN FALLS
CANAL COMPANY, a corporation, Defendant-Appel-
lant.

[167 P. (2d) 834.]
Rehearing denied April 22, 1946.

James R. Bothwell for appellant .

Chapman & Chapman for respondents.

BUDGE, J.—This is an action in which respondents seek to enjoin appellant from so operating Milner Dam and Milner Lake in the diversion of water from Snake River thereby causing injury to and ultimate destruction of lands of respondents described in the amended complaint. Appellant demurred to said complaint, which was overruled, whereupon appellant answered setting up numerous affirmative defenses, to which reference will be made later.

North American Company, a corporation, one of the parties respondent, is the owner and holder of the legal title to the land involved herein, which land borders on the south side of Milner Lake, that respondent, Harold H. Johnson, had a contract with said corporation to purchase said land, but subsequently, by contract, George Herbert Johnson and Martha Elmina Johnson, husband and wife, and parents of Harold H. Johnson, became the equitable owners of the land.

It is alleged in the amended complaint that Twin Falls Canal Company is the owner of an undivided 6/11ths interest in Milner Dam, wholly burdened with and has the exclusive control, management and operation of said dam; that the dam is used as a diversion dam from which the irrigation waters of appellant and other irrigation units are drawn for delivery to ultimate users; that Milner Lake is formed by waters impounded above the dam; that by reason of the manner of operation and use of Milner Dam the water level of the lake from April to November is higher than for the remainder of the year; that during the irrigation season of 1936, namely, April to November, by reason of the operation and use of Milner Dam, the waters of Milner Lake were raised, and washed upon and over and eroded and washed away the northermost portion of respondents' real estate bordering upon and constituting the shore line of Milner Lake, approximately two acres of said real estate; that by reason of and as a direct result of the operation and use of Milner Dam and Milner Lake by appellant, the real estate of respondents was injured, damaged and totally destroyed, to the great loss and damage of respondents. Then follows like allegations for four successive years, from 1937 to 1940, and for a sixth cause of action it is alleged that during the irrigation season of each year for many years past the waters of Milner Lake have, by reason of the operation of said dam by appellant, washed upon and over and eroded and washed away from the real estate of respondents bordering upon and constituting the shore line of said Milner Lake portions of said real estate amounting to approximately two acres during each year, thereby irreparably injuring, damaging and totally destroying that portion of said real estate of respondents eroded away and washed away during that year; that in the future appellant will continue to operate Milner Dam and Milner Lake in such manner that the waters will wash

upon and over and erode and wash away further land causing irreparable injury and damage unless appellant is enjoined; that respondents have requested appellant to prevent further encroachment of the waters of Milner Lake upon their lands, but without avail, and unless appellant is restrained from further operation and use of said Milner Lake in the manner in which it is used, the waters will continue to wash away and totally destroy the real estate of respondents to their great loss and irreparable injury. Respondents prayed that an injunction issue against appellant restraining it from operating Milner Dam and Milner Lake to the injury of respondents in the manner hereinbefore recited, and for a permanent injunction. Respondents also sought damages for the loss and destruction of the real estate, to which reference has been made. The trial court, however, considered only the equitable features of the case, reserving jurisdiction to submit the question of damages to a jury.

Appellant's answer placed in issue the allegations of the amended complaint, and as a first affirmative defense it alleged, *inter alia,* that on or about December 29, 1915, appellant became the owner of an undivided 6/11ths interest in Milner Dam and the right of way for the flowage of Milner Lake, created by said dam, and the North Side Canal Company, Limited, a corporation, became the owner of an undivided 5/11ths interest, established by decree of the United States District Court; that a supplemental decree or judgment was entered in the action on or about March 25, 1919, providing the water in the forebay of Milner Lake to be held at or about the depth of eleven feet above the sills of the waste gates. Subsequent to the federal decree and on or about June 30, 1928, American Falls Reservoir District No. 2 acquired an undivided 1/11th interest from the North Side Canal Company. Appellant has utilized the dam and lake for diverting water on the south side of Snake River for irrigation and domestic use for lands in Twin Falls County; that since December 29, 1915, the North Side Canal Company, Limited, has utilized the dam and lake to divert water on the north side of Snake River for irrigation and domestic use; that since on or about the 30th day of June, 1928, American Falls Reservoir District No. 2 has utilized the dam and lake to divert water on lands in Gooding County.

Whereupon, after hearing had upon the proof submitted by the respective parties, the court made its findings of fact, conclusions of law, and entered judgment and decree in favor of respondents, from which this appeal is prosecuted.

Appellant relies upon eighteen assignments of error, which we will not discuss *seriatim* or in full.

May 14, 1941, prior to the trial of the cause, appellant filed the following motion:

"Comes now the defendant and moves that an order be entered herein directing that the North Side Canal Company * * * and American Falls Reservoir District No. 2, * * * be brought in as additional parties defendant, * * *" which was denied, and is assigned as error, it being urged that there is a defect of parties defendant, in that the court failed to order the bringing in of said additional parties.

The court found in its finding of fact VII:

"That the defendant, Twin Falls Canal Company, a corporation, is wholly burdened with and has the exclusive control, management and operation of said Milner Dam; * * * is wholly burdened with and has exclusive control, management and operation of said Milner Lake in connection with the said operation and use of said Milner Dam."

The court's finding is predicated upon the record, and particularly upon a decree made and entered by the Judge of the United States District Court December 29, 1915, in an action wherein Twin Falls Canal Company, a corporation, was plaintiff, and Twin Falls Land and Water Company, a corporation, Twin Falls North Side Land and Water Company, a corporation, and North Side Canal Company, a corporation, were defendants. Among other things, said decree provides:

"2. It is furthermore ordered, adjudged and decreed that the said Twin Falls Land and Water Company execute and deliver a good and sufficient deed of conveyance * * * conveying to the Twin Falls Canal Company * * * an undivided interest in the Milner Dam * * * and shall likewise execute and deliver to the defendant, North Side Canal Company, * * * an undivided interest in said Milner Dam, the said interest to be conveyed to be on the basis of 6/11ths

to the said Twin Falls Canal Company, and 5/11ths to the North Side Canal Company. * * *

"3. And it is ordered, adjudged and decreed that the said Twin Falls Canal Company, plaintiff herein, *be and it is hereby declared and adjudged to be the owner of the said canal system* and irrigation works including a 6/11ths undivided interest in the said Milner Dam * * * and it is ordered, adjudged and decreed that the said *North Side Canal Company, defendant herein, be and it is hereby declared and adjudged to be the owner of 5/11ths undivided interest in the said Milner Dam,* * * * (Emphasis ours.)

"4. And it is furthermore ordered, adjudged and decreed that the right of the Twin Falls Canal Company, plaintiff herein, and the said North Side Canal Company, defendant herein, to the use of the said Milner Dam for the purpose of checking and impounding the waters flowing in the Snake River, be and the same is hereby expressly recognized and confirmed, and that the said dam shall be forever held, owned and used by the said companies for such purposes.

"5. *It is furthermore ordered, adjudged and decreed that the exclusive management and control of the said Milner Dam be and the same is hereby vested and placed in the said Twin Falls Canal Company, plaintiff herein, such control and management to be in the furtherance of the joint use of said dam for the purpose set forth above —and it is furthermore ordered, adjudged and decreed that the said Twin Falls Canal Company shall be responsible for the proper maintenance and safe-guarding of the said dam, the measure of its responsibility being reasonable care and diligence in view of the nature of the structure, its use, and the dangers thereto reasonably to be anticipated,* * * * (Emphasis ours.)

"6. It is furthermore ordered, adjudged and decreed that the said Twin Falls Canal Company shall incur any and all reasonable expense necessary for or incident to the maintaining and safe-guarding of said dam, and such expense shall be borne by the said Twin Falls Canal Company and the said North Side Canal Company, in proportion to the aggregate number of water rights held or owned by water users under each of said systems; and it is furthermore ordered, adjudged and decreed that in the

event any dispute or controversy should hereafter arise between the said companies as to the proportionate share to be borne, or as to the justness or legality of any charge or claim made for payment of such proportionate share, the same may be submitted to this court for decision upon ten days' notice, and this court hereby expressly reserves jurisdiction for the purpose of determining such controversies.

"7. It is furthermore ordered, adjudged and decreed that the said North Side Canal Company, defendant herein, shall pay to the Twin Falls Canal Company, plaintiff herein, the sum of $500.00 per year, as compensation for the supervision and responsibility hereinbefore decreed, same to include each year, beginning January 1st, 1914; and it is furthermore ordered, adjudged and decreed that the amount of this compensation may be changed from time to time by this court, upon application and ten days' notice, and jurisdiction is expressly reserved in this court for such purpose.

"8. And it is furthermore ordered, adjudged and decreed that jurisdiction be and the same is hereby retained in this court for the purpose of modifying at any time, either or any of the provisions of this decree relative to the enlargement, control and management of the said Milner Dam, and to direct and supervise the nature of any alteration, repair, or enlargement of said dam, in case the plaintiff fails to make or permit any such alteration or repair, and also jurisdiction to direct the height at which water shall be held in said dam."

It might be observed that as to defect of parties defendant, the court found:

## VII.

"That the defendant, Twin Falls Canal Company * * * *is wholly burdened with and has the exclusive control, management and operation of said Milner Dam;* that * * * Twin Falls Canal Company * * * does now operate and use, and said Company or its predecessors in interest, Twin Falls Land and Water Company, have operated and used said Milner Dam since its construction as a diversion dam from which the irrigation waters of the defendant and other irrigation units are drawn for delivery to ultimate

users; that in the said operation and use of the said Milner Dam the defendant has caused the raising of the waters of Snake River and other supplemental waters flowing in the channel of said Snake River above the normal and natural level of the flow of the waters of said river behind the said Milner Dam for a distance of approximately twenty-five miles; that the backing up and raising of said waters behind the said Milner Dam has formed and there now exists and prior to the 20th day of July, 1905, has existed, what is known as Milner Lake, *and that the defendant Twin Falls Canal Company * * * is wholly burdened with and has exclusive control, management and operation of said Milner Lake in connection with the said operation and use of said Milner Dam."* (Emphasis ours.)

The North Side Canal Company was required to pay to the Twin Falls Canal Company its proportionate share of the cost or expense incurred by said Twin Falls Canal Company in carrying out the provisions contained in the federal decree, the Twin Falls Canal Company being wholly burdened with the control, management and operation of said Milner Dam and Milner Lake.

The trial court did not err in denying the motion heretofore referred to.

Subsequent to the entry of the federal decree the Judge of said Court, on or about March 25, 1919, entered a supplemental decree, wherein it is provided:

"That during the irrigation season in each year hereafter, the water in the forebay of the Milner Dam shall be held and kept at or about the depth of eleven feet above the sills of the waste gates, so long as the same may be necessary or required by either of said Canal Companies, * * * Provided, that should danger appear imminent to relieve such danger until the cause is remedied or removed, and in the event the said parties are unable to agree as to the manner of such operation or the method of removing such danger, then the same shall be forthwith brought to the attention of the court * * *"

Respondents were not parties to the action in the federal court and contend they are not bound thereby, nor by the supplemental decree. Their alleged cause of action is founded upon, and they seek to recover damages accru-

ing from 1935 to 1940, said damages being caused as and in the manner alleged in respondents' amended complaint.

As an affirmative defense appellant alleges:

"That the Twin Falls Land and Water Company * * * predecessor in interest of defendant, acquired from one Thomas A. Starrh and Mary A. Starrh, his wife, predecessors in interest of the plaintiffs herein, a grant and easement in writing to flow the lands in question by the waters of Milner Lake, all of which more fully appears by that certain grant deed and release dated July 20, 1905, * * *"

Prior to the construction of Milner Dam and Milner Lake appellant's predecessor realized the construction of the dam and lake would necessitate the acquiring of considerable land which would be inundated by the waters of Milner Lake, and by reason thereof purchased from the Starrhs 97.3 acres bordering Milner Lake.

Appellant contends the court erred as to the construction to be placed upon the Starrh deed, and particularly the release included therein, as specified in assignment VI, and erred in its conclusion of law III, "for the reason that said conclusion of law is not supported by the evidence and is based upon conjecture and is clearly contrary to the language and the evident purpose and intent of the instrument." Conclusion of Law III is as follows:

"That the following provision contained in the deed dated July 20, 1905, from Thomas A. Starrh and Mary A. Starrh, his wife, to Twin Falls Land and Water Company, the predecessor in interest of the Twin Falls Canal Company hereinabove referred to, which reads as follows:

" 'And the said parties of the first part hereby in consideration of the sum hereinbefore stated forever release and discharge the said party of the second part from any and all liability, claim and demand of every kind whatsoever on account of the flooding of any portion of Sections 19 and 20 aforesaid caused by the raising of the waters of Snake River by the dam of said party of the second part', was made with reference to, and in contemplation of, the shore line and water level of said Milner Lake at the date of said deed, and had reference to and covered and included, all damages and liability, claims and demands

whatsoever on account of the flooding of said Sections 19 and 20, Township 10 South, Range 22 East of the Boise Meridian, theretofore, and did not contemplate, or have reference to, or cover and include, the flooding and damage to, or destruction of, the lands belonging to said grantors in said deed and now belonging to the additional parties plaintiff herein lying in said sections 19 and 20, Township 10 South, Range 22 East of the Boise Meridian, and particularly did not contemplate or have reference to, or cover or include, damage to, or erosion and destruction of, said lands o'f the additional parties plaintiff hereby by the subsequent raising of the elevation of the waters in the forebay of Milner Dam; that the said release provision contained in said deed was not intended to, and did not, relate to, or cover or include, damage to lands other than those described in said deed; and that the plaintiff's cause of action is not barred by the provisions of said deed."

Appellant also contends that the court erred in its conclusions of law IV and V, for the reason that the same are not supported by any competent evidence in the record, and it affirmatively appears that the action of the waters in Milner Lake on the land described in the complaint does. not constitute a trespass on said lands. Said conclusions of law are as follows:

## IV.

"That the action of the waters of Milner Lake in washing upon and over, eroding and washing away the lands belonging to the additional parties plaintiff herein, constitutes a trespass upon the lands belonging to said additional parties plaintiff."

## V.

"That the right of the defendant, Twin Falls Canal Company, a corporation, to continuously trespass upon the lands belonging to the additional parties plaintiff, caused by the waters of Milner Lake washing upon and over, and eroding and washing away said lands, resulting in their utter and complete destruction, cannot be acquired by adverse possession or by or through the continuation of such wrongful trespass."

The deed from the Starrhs to appellant's predecessor con-

veyed title in fee to the lands described therein, and further contained the following provision:

"And the said parties of the first part hereby in consideration of the sum hereinbefore stated forever release and discharge the said party of the second part from any and all liability, claim and demand of every kind whatsoever on account of the flooding of any portion of Sections 19 and 20 aforesaid caused by the rising of the waters of Snake River by the dam of said party of the second part."

Appellant's contention is, that by reason of the aforementioned provision it is released and discharged forever from any and all liability caused by the elevation of the waters of Snake River by the dam.

Exhibit 3, the contract between the State and Twin Falls Land and Water Company, of date January, 1903, was for the irrigation and reclamation of 270,000 acres of land under the South Side Project. Construction work on the dam commenced in the spring of 1903, and on March 1, 1905, said construction work was so far completed that water was turned into the first section of the canal for the irrigation and reclamation of 50,000 acres. Construction work was prosecuted vigorously, and the canal system on the south side of the river was completed in the fall of 1907.

The Starrh deed, heretofore referred to, was filed for record in Twin Falls County July 22, 1905, or three months subsequent to the availability of water for the irrigation of 50,000 acres.

Coming now to the Twin Falls North Side Project, to which reference is made in appellant's Exhibit 3, the first plan contemplated that a canal would be taken out at Milner Dam for the irrigation and reclamation of 30,000 acres. In the spring of 1907 the Twin Falls North Side Land and Water Company purchased the right of the Twin Falls Land and Water Company for the irrigation of this tract of 30,000 acres, and entered into contracts with the State of Idaho for the extension of the canal so as to cover in the aggregate 185,000 acres of land under said project. The first section of the canal, covering what is known as the first segregation of 30,000 acres of land, was completed in the spring of 1908, and water delivered to the settlers on that tract. The remainder of the canal system was not com-

pleted until 1909, about four years subsequent to the execution and delivery of the Starrh deed, and the acreage to be irrigated was increased from 30,000 to 125,000 acres. This company filed its proposal with the State in June, 1908, for an extension of its canal beyond what is known as the first segregation to cover an area of 50,000 acres, making a total of 235,000 acres. (Report of State Engineer (1907-1908) pp. 182, 184.) The American Falls Reservoir District No. 2 has utilized the dam and lake to divert water on the north side of the river since on or about June 30, 1928, twenty-three years subsequent to the date of the Starrh deed.

Looking to the record, we are not of the opinion the parties to the release contemplated, anticipated or had in mind at the time of its execution, the sale or extension of the North Side Canal or the construction of American Falls Reservoir District No. 2, thereby increasing the depth of the waters of the lake from slightly over eight feet to in excess of eleven feet, causing the loss and damage sustained by respondents, but at most, if at all, only had in mind the irrigation of the South Side Land and Water Project and the North Side Canal Project as limited and planned in appellant's Exhibit 3.

In a release such as we are considering, the general language will be held not to include a particular injury then unknown to both parties of a character so serious as clearly to indicate that, if it had been known, the release would not have been signed. (*Lumley v. Wabash R. Co.,* 76 F. 66, 22 C.C.A. 60; *Great Northern R. Co. v. Reid,* 245 F. 86; *Tatman v. Phila. Etc. R. Co.* (Del.), 85 A. 716; *Seaver v. Snider* (Colo.), 122 P. 402; 53 C.J., sec. 85, pp. 1268-69.)

The rule is stated in 23 R.C.L., sec. 17, p. 387, as follows:

"And the doctrine is firmly rooted in equity that when an instrument is so general in its terms as to release the rights of a party of which he was ignorant, and which were not in contemplation of the bargain at the time it was made, the instrument will be restrained to the purposes of the bargain, and the release confined to the right intended to be released." (See, also, 45 Am. Jur., sec. 30, p. 694; *Blair v. Chicago, etc. R. Co.* (Mo.) 1 S.W. 350.)

To support the foregoing conclusion we call attention to the following cases: *Darby Petroleum Co. v. Mason* (Okla.) 54 P. (2d) 1046; *The Ross Coddington*, 40 F. (2d) 280; *Lane v. Wentworth* (Ore.), 138 P. 468; *Todd v. Mitchell* (Ill.), 48 N.E. 35; *Grumley v. Webb* (Mo.), 100 Am. Dec. 304; *Ramey v. Baltimore, etc. R. Co.* (Ill.), 85 N.E. 639 *Clark v. Clark* (Ia.), 196 N.W. 1011; *Van Slyke v. Van Slyke* (N.J.), 78 A. 179, 31 L.R.A. (N.S.) 778, Ann. Cas. 1912A, 498.

In *Tupper v. Massachusetts Bonding Co.* (Minn.), 194 N.W. 99, 101, it is said:

"In the case at bar the effect of the release, according to defendant's contention, is to discharge a claim of which neither party had any knowledge. No intention to release it could be imputed to plaintiff, because she did not know of its existence, and conversely, defendant did not intend to exact a release of the present claim because it was equally ignorant of its existence."

■ An examination of the release supports the conclusion that it falls within the rule that demands subsequently maturing, not in the minds of the parties nor contemplated, are not discharged unless expressly embraced within the terms of the instrument, and that it only operates as a full and complete release for all claims that had arisen to the date of the release. (53 C.J., sec. 86, pp. 1269-70.)

■ It is established that it was never in the minds of the parties to the release at the time it was executed, that the water level of the lake would be raised to a depth that would result in the gnawing, eating away, and ultimate destruction of respondents' land. The right to flood is not a right to erode and destroy.

■ Concluding this feature of the case, the release contained in the Starrh deed makes no mention of future damages, for which reason it is not binding upon respondents. (53 C.J., sec. 86, pp. 1269-70; *Darby Petroleum Corporation v. Mason* (Okla.), 54 P. (2d) 1046; *Adkins v. Indianapolis So. Ry. Co.*, 165 Ill. App. 300; *McCabe v. N.Y. Cent. R. Co.*, 124 N.Y.S. 652; *Crum v. Penn. R. Co.* (Pa.), 75 A. 183; *Moore v. Hope Natural Gas Co.* (W. Va.), 86 S.E. 564.) Neither can it be so construed as to cover dam-

ages caused by the water in Milner Lake due to the construction of the dam, not in contemplation of the parties or to be anticipated, and who were ignorant of the fact that additional projects would be enlarged or constructed. (*White v. So. R. Co.* (S.C.), 140 S.E. 560, 57 A.L.R. 634; *Yazoo Etc. R. Co. v. Smith* (Miss.), 43 So. 611, 10 L.R.A. (N.S.) 1202.)

Appellant urges, as a further affirmative defense, that it has acquired a right by adverse possession, or a prescriptive right, to maintain and operate the dam as it has been maintained and operated since its construction, which includes the right of flowage of the lands in question, and respondents are estopped from maintaining this action for injunction.

Conceding, but not deciding, that the above statement is correct, appellant is not using respondents' land to the same extent or in the same manner as it did when the dam was constructed, but has increased the water level of the lake from eight and a fraction feet to eleven and a fraction feet, causing the damage complained of, to-wit, that it has over-flowed additional lands by eroding, washing away and absolutely destroying respondents' land.

"The right acquired by prescription is coextensive with the extent to which the right has been enjoyed during the period of prescription. Thus the manner and extent of the use during this period, with reference to the head of water maintained and other such circumstances, limit the extent to which the privilege is available after the right has fully vested, and the prescriptive right to maintain a dam flooding lands is not affected by a change in the dam so long as it does not cause the flowage to set back further on such lands than theretofore." (67 C.J., sec. 369, p. 923.)

Under such circumstances it cannot logically be contended that appellant has acquired a prescriptive right to destroy, by erosion and washing away, respondents' land. Where the injury caused is irreparable and destroys the inheritance, and will continue by recurrence, relief by permanent injunction will be granted. (43 C.J.S., sec. 64, p. 525; 32 C.J., secs. 181, 182, 183, pp. 136-138.) Injunction lies to restrain the repetitions of a trespass, especially where, as here, the injury would be irreparable. (14 R.C.L., sec. 49, p. 347; *Wilson v. Eagleson,* 9 Ida. 17, 71 P. 613; *Union*

*Cent. L. Ins. Co. v. Audet* (Mont.), 21 P. (2d) 53, 92 A.L.R. 571 and note; *Bradley v. Renfrow* (Okla.), 84 P. (2d) 430; *Gorton v. Schofield* (Mass.), 41 N.E. (2d) 12.) In the instant case there is no doubt there is, and has been, a continuous, recurring trespass; that the damage done and being done to the land is irreparable and, if continued, respondents' farm lands may become non-existent.

Appellant contends that respondents' cause of action, if any, is barred by the statute of limitations, sec. 5-218, subsec. 2, and sec. 5-224, I.C.A.; that the court erred in concluding as a matter of law, in conclusion VI, that respondents' right to an injunction is not barred by the statute of limitations, and that the court erred in making its conclusions of law VII, VIII and IX for the reason that they are not supported by an substantial competent evidence, and further contending that the damage caused to respondents' land is but a part of the permitted damage caused by the construction of Milner Dam and Milner Lake, therefore respondents' cause of action accrued when the dam and lake were constructed, and is barred by the statute of limitations, supra.

This is a case of periodic washing away, eroding and permanently destroying respondents' land, and falls within the numerous authorities holding that progressive, annual or intermittent destruction of land, in the manner just stated, constitutes an independent cause of action, the damage not being caused by the erection of the dam and lake, but damage that flows indirectly and consequentially through said construction due to intervening agencies. (*Rogers v. Oregon-Washington etc. R. Co.*, 28 Ida. 609, 156 P. 98; *Deffenbaugh v. Washington W. P. Co.*, 24 Ida. 514, 135 P. 247; *Hill v. Standard Min. Co.*, 12 Ida. 223, 85 P. 907; 37 C.J., sec. 257, p. 895; 67 C.J., sec. 75, p. 731; 17 R.C.L., sec. 158, p. 791.)

Based upon the facts disclosed and the court's findings of fact, which are sustained by the record, respondents' land, in the absence of injunctive relief granted, could well be further destroyed.

The court did not err in granting permanent injunctive relief, and entering its judgment in favor of respondents.

The judgment is affirmed. Costs to respondents.

Ailshie, C.J., and Holden and Miller, JJ., concur.

GIVENS, J.—I concur because of what was not shown as to what 'was released by the Starrh deed, rather than what was shown.