DAVIS, ET AL., APPELLANTS, *v.* BURTON, ET AL., RESPONDENTS.
No. 9113.
Submitted April 25, 1952. Decided July 28, 1952.
246 Pac. (2d) 236.

138

Mr. Ralph J. Anderson, Helena, Messrs. Berg and Pfohl, Livingston, Mr. Michael J. O'Connell, Bozeman, for appellants.

Mr. H. A. Bolinger, Jr., Mr. George W. Horkan, Bozeman, for respondent.

Mr. Anderson, Mr. Ben E. Berg, Jr., and Mr. Bolinger argued orally.

MR. JUSTICE ANGSTMAN:

This is an appeal from an order denying plaintiffs' application for an injunction *pendente lite*. The action seeks cancellation and termination of a written contract between plaintiffs and defendants for alleged failure upon the part of defendants to carry out certain of its terms and conditions.

The contract is attached to the complaint and is denominated a "lease." By its terms plaintiffs leased to defendants 1600 acres of described land near Willow Creek for a period of three crop years. It was executed on May 31, 1949, and by its terms was to end on January 1, 1952. It is quite specific in its terms in prescribing the rights and obligations of the parties. It contains a clause to the effect that the parties of the second part (defendants) "will seed and cultivate such portions of said leased premises at the times and in the manner as advised by first parties [plaintiffs]." It contains this clause: "In the event second parties do not perform the covenants and agreements herein contained to be kept and performed by them during the term of this lease, that first parties shall have a right

to terminate and end this agreement on January 1st of any year during the term hereof;'' provided the first parties shall first give ten days written notice of the default and the second parties shall not have corrected the default within 30 days after the receipt of the notice. Acting pursuant to this clause the plaintiffs gave written notice to defendants of alleged default in the covenants and conditions of the contract in that they did not farm the land in accordance with instructions from the plaintiffs and demanded that defendants quit the lands. The complaint alleges that defendants have not complied with the notice and demand; that plaintiffs have suffered damages which are of such a nature and character as to be incapable of proof to the degree of certainty necessary to furnish an adequate remedy at law.

Pursuant to the prayer of the complaint the court issued an order to show cause directing defendants to show cause why they should not be restrained and enjoined from occupying the lands pending trial of the action on its merits. After hearing had pursuant to the order to show cause the court denied plaintiffs' application for injunction *pendente lite* and sustained defendants' motion to dismiss the order to show cause. Plaintiffs have appealed from this order.

The general rule is that the title to, or right of possession of, real estate may not be litigated in a suit for an injunction. National Bank of Montana v. Bingham, 83 Mont. 21, 269 Pac. 162; Blinn v. Hutterische Society of Wolf Creek, 58 Mont. 542, 194 Pac. 140, Union Central Life Ins. Co. v. Audet, 94 Mont. 79, 21 Pac. (2d) 53, 92 A. L. R. 571.

However, upon proper showing in a suit for injunction where a cropping agreement in involved, possession of lands may be taken from one party and given to the other. Union Central Ins. Co. v. Audet, 94 Mont. 79, 21 Pac. (2d) 53, 92 A. L. R. 571; Gibbons v. Huntsinger, 105 Mont. 562, 74 Pac. (2d) 443; Schneider v. Nelson, 111 Mont. 377, 110 Pac. (2d) 972.

Plaintiffs contend that the agreement here involved constitutes a croppers' agreement and not a lease. The court

accepted defendants' view that the agreement is in legal effect a lease.

The question is one of construction. ''The essential difference between a cropper and a tenant is that a tenant has an estate in the land for his term and, consequently, a right of property in the crop which he grows,'' while a cropper's ''possession of the crop is only that of a servant, which is in law that of the landlord who must set off to the cropper his share thereof.'' 15 Am. Jur., Crops, sec. 45, p. 237.

''The most important question to be answered in arriving at the intention of the parties and the consequential relation created · is which· party was entitled to the possession of the land. · If it was the intention that the landowner part with, and the other party have, the exclusive possession of the land for the purpose of cultivation, as a general rule the transaction will be considered a lease and the relation between the parties that of landlord and tenant. If· the contractual relation of the parties is to the effect that the landowner is to have supervising possession of the land to be cultivated and the party working the · land is to be a wage earner although in terms of part of the crop, the relation is that of landowner and share cropper.'' 15 Am. Jur., Crops, sec. 49, p. 240; 52 C. J. S., Landlord & Tenant, sec. 797, p: 721.

Here it is clear from the agreement that defendants were to have possession of the land· during the term of the agreement, except as to hay land and as to that the contract provided ''that first parties reserve the right to graze and pasture the same.'' There would have been no occasion to reserve this right if the agreement were merely a cropping agreement. The parties evidently contemplated that without the reservation, there was a passing of possession and· an estate in the land during the term.

The agreement also provided that parties of the second part ''will deliver up to first parties possession of said leased premises at the expiration of this lease.'' This clearly contemplated· that defendants should have possession during the term of the agreement. It is a circumstance indicating the inten-

tion to create the relation of landlord and tenant. 52 C. J. S., Landlord & Tenant, sec. 797, p. 723, note 51. It follows that defendants were likewise the owners of the crops until division for the rule is that ''crops grown by a person in possession of land under a claim of right, holding adversely to all others, are his property whether or not severed from the land.'' 25 C. J. S., Crops, sec. 5, p. 6.

The agreement also provided that the occupier shall not commit ''any waste or damage, or suffer any to be done,'' and this is one of the criteria by which to determine whether the agreement created the relation of landlord and tenant or only that of owner and cropper. 52 C. J. S., Landlord & Tenant, sec. 797, p. 723, note 50. See State ex rel. Gillilian v. Municipal Court, 123 Minn. 377, 143 N. W. 978, which had to do with an agreement much like the one before us.

Like other contracts, whether the relation of the parties is that of landlord and tenant or landowner and cropper turns upon the intention of the parties as gathered from the entire contract; the language in which it is cast and the circumstances surrounding its execution. 15 Am. Jur., Crops, sec. 48, p. 238.

Here the parties to the contract treated it as a lease and not a cropping contract by repeatedly using the word ''lease'' in the agreement.

This case then is distinguishable from that of Union Central Life Ins. Co. v. Audet, 94 Mont. 79, 21 Pac. (2d) 53, 92 A. L. R. 571; Wells-Dickey Co. v. Embody, 82 Mont. 150, 266 Pac. 869; and Gibbons v. Huntsinger, 105 Mont. 562, 74 Pac. (2d) 443; where possession and right to possession of the premises remained at all times in the owner.

This case is more comparable to that of Dolin v. Wachter, 87 Mont. 466, 288 Pac. 616, and Kester v. Amon, 81 Mont. 1, 261 Pac. 288, where it was held the relationship was that of landlord and tenant.

The court did not err in holding that the relationship between

the parties was that of landlord and tenant and in denying the injunction *pendente lite:*

The order appealed from is affirmed.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES METCALF, FREEBOURN and BOTTOMLY, concur.