**In re WAIKIKI HOBRON ASSOCIATES, Debtor.**

No. 79–00206.

United States Bankruptcy Court, D. Hawaii.

July 23, 1985.

Randolph Slaton, Paul Alston, Honolulu, Hawaii, for movants.

William H. Dodd, Honolulu, Hawaii, for respondent.

## ORDER GRANTING MOTION TO DECLARE RELEASES NULL AND VOID

JON J. CHINEN, Bankruptcy Judge.

Waikiki Hobron Associates ("Debtor") is a limited partnership which was created for the purpose of developing the Waikiki Hobron Condominium. Joel N. Pahk, Daniel N. Pahk, Isaac N. Pahk and Mie Kim Pahk (hereinafter collectively referred to as the "Pahks") are limited partners who own a combined 30% of the limited partnership.

The limited partnership entered into a management agreement with Central Hobron Associates ("CHA"). On May 18, 1979, the Debtor filed a bankruptcy petition under Chapter XII. On October 15, 1981, the Chapter XII proceeding was converted to a Chapter VII proceeding.

On March 15, 1982, CHA entered into a Buy-Sell Agreement with SAJE Ventures II ("SAJE"). SAJE agreed to purchase all of CHA's interests in the limited partnership and its assets. On January 7, 1983, SAJE entered into a Joint Development Agreement with the Trustee. The Joint Development Agreement gives SAJE the right to acquire the land and the assets of the limited partnership in exchange for agreeing to satisfy certain project creditors and paying the trustee the sum of $100,-000.00. The Joint Development Agreement provides that Pankow will be designated the general contractor of the project.

On December 22, 1982, the trustee filed an Application by Trustee for Order Approving Joint Development Agreement. ("Application"). The Notice of Hearing on the Application ("Notice") was sent to approximately 292 individuals and entities. A hearing on the Application was held on January 3, 1983. At the hearing, the Pahks were represented by John L. McDermott, Esq., ("McDermott") who had been served with the Notice. The hearing was continued until January 6, 1983, at which time the Court held that Mrs. Pahk had no standing in the joint venture with SAJE and authorized the Trustee to enter into the joint venture based on the Court's finding that the joint venture was in the best interest of the creditors since all creditors were in agreement with the joint venture. The Order Approving Joint Development Agreement was filed on January 7, 1983.

Paragraph 2(e)(2) of the Joint Development Agreement provides, in part, that the claimants listed in Exhibit "C" shall assign to SAJE executed releases and/or settlements of their claims against the Trustee. In particular, Paragraph 2(e)(2) provides as follows:

> The claimants listed in Exhibit "C" attached hereto shall assign to SAJE, [sic] executed releases and/or settlements of their respective claims against the Trustee and/or WHA's estate and their respective liens, encumbrances and interests in the Project, the real estate described in Exhibit "A" attached hereto, and other assets of WHA's estate.

Pursuant to Paragraph 2(e)(2), the Trustee and 16 of the 17 claimants listed in Exhibit "C", including CHA, executed mutual releases.

Paragraph 2(e)(3) of the Joint Development Agreement provides, in part, that SAJE shall release and/or obtain the release and/or settlements of claims against the Trustee. Paragraph 2(e)(3) provides as follows:

> SAJE shall release and/or obtain release [sic] and/or settlements of said claims against the Trustee and WHA's estate and said liens, encumbrances and interests in the Project, the real estate

described in Exhibit "A" attached hereto, and other assets of WHA's estate.

Pursuant to Paragraph 2(e)(3), the Trustee and Pankow, the general contractor of the project, executed a mutual release.

On April 10, 1984, the Trustee and Pahks filed a Motion to Declare Releases Null and Void. The Trustee and the Pahks assert that the mutual release between the Trustee and CHA and the mutual release between the Trustee and Pankow are null and void because the court did not approve these mutual releases. CHA takes no position on the merits of this Motion and Pankow opposes it.

■ Pankow argues that the Pahks do not meet the threshold requirement of standing to bring this motion because they are not creditors of the estate. Nevertheless, it is clear that even if the Pahks do not have standing, the Trustee is a proper party to bring this motion.

■ Section 27 of the Bankruptcy Act is applicable to the instant case. Under Section 27,

> [t]he receiver or trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate.

It is well-established that the trustee is not empowered to settle or compromise any case without court approval. *Parker v. Baltimore Paint & Chemical Corp.*, 273 F.Supp. 651 (D.C.Colo.1967); 2A Collier on Bankruptcy ¶ 27.04 (14th edition).

■ A mutual release is in the nature of a settlement or compromise which requires court approval. *See Parker v. Baltimore Paint & Chemical Corp.*, 273 F.Supp 651 (D.C.Colo.1967). Although the Court approved the Joint Development Agreement, Court approval of the releases and/or settlements was, nevertheless, required.

First, it is noteworthy that the Joint Development Agreement does not directly authorize the Trustee to perform any act. In particular, the Joint Development Agreement provides that the *claimants in Ex-hibit "C"* shall assign to SAJE executed releases of their claims against the Trustee. Likewise, the Joint Development Agreement provides that *SAJE* shall be responsible for the settlement of the claims listed in Exhibit "C" and that *SAJE* shall obtain releases and/or settlements of these claims against the Trustee. In addition, the Joint Development Agreement provides that *SAJE* shall obtain the release of liens in the Project, the real estate and other assets of the estate. In the applicable provisions of the Joint Development Agreement, the claimants listed in Exhibit "C" and SAJE are the subjects who are directed to perform certain acts.

■ Second, the Court, in determining whether to approve the settlement or compromise, must consider factors such as the probability of success in litigation, difficulties of discovery, complexity, expense, delay and the paramount interests of creditors. *In re Hallet*, 33 B.R. 564 (Bankr.Me. 1983). In order to evaluate these factors the court as well as the creditors must be made aware of the terms and conditions of the settlement or compromise. An application for approval of the settlement and/or compromise which fully discloses its terms and conditions, therefore, must be presented to the court for its approval. As stated in *In re Medical Sterile Products*, 310 F.Supp. 262, 263–64 (D.P.R.1970),

> the requirement for court approval, as established in § 27 of the Bankruptcy Act. ... is rigid and makes necessary the submission of an application containing all the facts pertinent to a proposed compromise.

In the instant case, the Court notes that the claims contained in Exhibit "C" involve several million dollars. For example, the claim of CHA is $3,310,000.00. In addition, Pankow received from SAJE a promissory note in the amount of $2.1 million secured by a second mortgage on the land on which the project was constructed. Furthermore, the Court notes that although the Joint Development Agreement was brought to this Court's attention for its approval, the Buy-Sell Agreement, in contrast, was not

brought to the attention of the Court by SAJE. For the reasons mentioned above, the Court rules that court approval of the specific releases and settlements is required.

■ However, although a compromise or settlement should not be effected by a Trustee without first obtaining leave of court, the compromise or settlement may be sustained if the circumstances as such that the approval of the court would have been given if asked. *See Simmons v. Richards,* 28 Tex.Civ.App. 112, 66 S.W. 687 (1902). Thus, the court requires the Trustee forthwith to apply to this court for approval of the releases which have not been challenged by the Trustee. If the court finds that the unchallenged releases are in the best interests of the estate and creditors, the Court will sustain the releases despite the delay.

The Trustee has challenged the releases of CHA and Pankow. The Trustee further asserts that he believes "that the estate has certain causes of action which, if not barred by the releases, will generate sufficient funds to satisfy the claims of the few remaining creditors and to create a surplus for the benefit of the limited partners." Memorandum in Support of Motion to Declare Releases Null and Void, filed on April 10, 1984. In his Affidavit, the Trustee states as follows:

5. In the event said releases were set aside, as trustee I intend to assert certain claims on behalf of the estate in the action filed by the members of PAHK family against Central Hobron Associates, Charles Pankow Associates, and others by joining as a plaintiff in the filing of an amended complaint. Despite my earlier request, the PAHK family had not identified the source of the claims prior to the closing of escrow, and I became aware of the claims only after they were specified and identified by present counsel for the members of the PAHK family.

The Trustee, in essence, claims that he was unaware of the claims against CHA and Pankow at the time he signed the Releases.

■ It has been held that "a release, no matter how broad its terms, does not include claims not within the contemplation of the parties." *Pennwalt Corporation v. Metropolitan Sanitary District of Greater Chicago,* 368 F.Supp 972, 979 (N.D.Ill. 1973); *See also; Johnson v. Twin Falls Canal Co.,* 66 Idaho 660, 167 P.2d 834 (1946) (the general language of a release will not be construed as including an injury unknown to both parties which if known the release would not have been signed.) As stated in *In Re F.H. McGraw & Company,* 473 F.2d 465 (3rd Cir.1973),

[i]t is horn book law that a release covers only such matters as were within the contemplation of the parties at the time the contract was entered into.

*Id.* at 467. The court agreed with "professor Williston's suggestion that '[w]herever a bargain is intended to operate in the future as an exemption the courts apply more stringent rules of interpretation.'" *Id.* at 468. Williston, Selections on Contracts, § 1826.

■ Based on the foregoing, the Court declines to sustain the releases of CHA and Pankow because these releases are of claims which were not within the contemplation of the parties at the time the releases were signed.

IT IS HEREBY ORDERED that the motion is granted and the mutual releases executed by the trustee on January 31, 1983, with Central Hobron Associates and Charles Pankow Associates are declared null and void.

IT IS FURTHER ORDERED that the Trustee shall forthwith apply to this Court for approval of the other Releases and Settlements executed pursuant to the Joint Development Agreement.